# 13-1589-cv(L),
## 13-1779-cv(XAP), 13-1791-cv(XAP)

# United States Court of Appeals
*for the*
# Second Circuit

BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

NEUBERGER BERMAN LLC, NEUBERGER BERMAN MANAGEMENT LLC, BENJAMIN SEGAL, PETER E. SUNDMAN, JACK L. RIVKIN, JOHN CANNON, FAITH COLISH, C. ANNE HARVEY, ROBERT A. KAVESH, HOWARD A. MILEAF, EDWARD I. O'BRIEN, WILLIAM E. RULON, CORNELIUS T. RYAN, TOM D. SEIP, CANDACE L. STRAIGHT, PETER P. TRAPP, NEUBERGER BERMAN EQUITY FUNDS, D/B/A NEUBERGER BERMAN INTERNATIONAL FUND,

*Defendants-Appellees-Cross-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES-CROSS-APPELLANTS JOHN CANNON, FAITH COLISH, C. ANNE HARVEY, ROBERT A. KAVESH, HOWARD A. MILEAF, EDWARD I. O'BRIEN, WILLIAM E. RULON, CORNELIUS T. RYAN, TOM D. SEIP, CANDACE L. STRAIGHT, PETER P. TRAPP AND NEUBERGER BERMAN EQUITY FUNDS, D/B/A NEUBERGER BERMAN INTERNATIONAL FUND

*Of Counsel:*
    JEFFREY B. MALETTA
    NICHOLAS G. TERRIS
    THEODORE L. KORNOBIS

K&L GATES LLP
1601 K Street, NW
Washington, DC 20006
(202) 778-9000

*Attorneys for Defendants-Appellees-Cross-Appellants John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, Peter P. Trapp and Neuberger Berman Equity Funds, d/b/a Neuberger Berman International Fund*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee / Cross-Appellant Nominal Defendant Neuberger Berman Equity Funds (the "Trust") d/b/a Neuberger Berman Institutional Fund[1] hereby discloses as follows:

1.      The Trust is a Delaware statutory trust and is registered with the Securities and Exchange Commission as an open-end management investment company under the Investment Company Act of 1940.  The Trust is comprised of a number of separate series or "funds."  Plaintiff's lawsuit concerns one of these series, the Neuberger Berman International Fund, which has since been reorganized into the Neuberger Berman Institutional Fund.

2.      The Trust has no corporate parent.

3.      Setting aside non-beneficial record owners, such as when shares are held in street name, based on the information reasonably available to it, the Trust states that there is no publicly held corporation that beneficially owns 10% or more of the shares of the Fund.

---

[1]      At the time of the conduct at issue and the majority of the proceedings below, the Fund was known as the Neuberger Berman International Fund. Pursuant to a plan of reorganization and termination approved October 25, 2012, that fund was reorganized and transferred all of its assets to the Neuberger Berman Institutional Fund.  This Corporate Disclosure Statement and the accompanying brief use the term "Fund" to refer to both the former Neuberger Berman International Fund and the successor Neuberger Berman Institutional Fund.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED .....................................1

STATEMENT OF THE CASE................................................................3

STATEMENT OF FACTS .....................................................................5

    A.    The Parties ................................................................5

    B.    Plaintiff's Litigation History ....................................5

    C.    The Decision Below ................................................14

    D.    The Appeals ............................................................14

SUMMARY OF ARGUMENT ............................................................15

ARGUMENT ......................................................................................18

STANDARD OF REVIEW .................................................................18

I.    THE DISTRICT COURT CORRECTLY HELD THAT
DELAWARE'S BUSINESS JUDGMENT RULE APPLIED......................19

    A.    Maryland Law Is Irrelevant.....................................22

    B.    Delaware Demand Excused Cases Are Irrelevant ..............23

    C.    Delaware Law Applies to Derivative Actions by Investment
Company Shareholders ............................................26

II.    THE DISTRICT COURT CORRECTLY HELD THAT
PLAINTIFF'S ALLEGATIONS REGARDING THE BOARD'S
SUPPOSED CONFLICTS ARE IRRELEVANT .......................29

III.    THE DISTRICT COURT CORRECTLY REJECTED
PLAINTIFF'S ALLEGATIONS REGARDING THE BOARD'S
PROCESS IN REVIEWING PLAINTIFF'S DEMAND.............32

    A.    The Board's Decision to Delegate Certain Tasks Is Protected
by the Business Judgment Rule.................................33

1.     It Was Proper for the Board to Retain Final Authority to Determine the Response to the Demand ...............................34

2.     It Was Proper for the SDC to Be Comprised of Independent Board Members .....................................................35

3.     It Was Proper for the SDC to Delegate Certain Tasks to Independent Counsel ..................................................36

B.     The Board Was Not Obligated to Communicate with Plaintiff More Frequently, to Provide Plaintiff Discovery or to Allow Him to Control the Investigation ..........................................37

C.     Plaintiff's Arguments Regarding the Timetable of the Board's Investigation and Tolling Agreements Are Meritless ........................40

1.     The Board's Chosen Timetable Was Well Within Its Business Judgment ...................................................41

2.     Plaintiff's Delay Created Any Statute of Limitations Issue ....................................................................42

3.     Plaintiff's Arguments Based on the Tolling Agreements Are Meritless ......................................43

D.     The Board's Acknowledgement That Pertinent Judicial Authority Would Inform Its Review of Plaintiff's Demand Did Not Waive the Demand Requirement ...........................47

IV.     PLAINTIFF HAS WAIVED HIS ATTACKS ON THE SUBSTANCE OF THE BOARD'S DECISION ............................................50

V.     PLAINTIFF'S COMPLAINT FAILED TO ALLEGE PARTICULARIZED FACTS SHOWING THAT THE BOARD LACKED *EX ANTE* INDEPENDENCE ......................................52

A.     Plaintiff Did Not Allege Particularized Facts Showing That the Independent Trustees and SDC Members Were Interested ..........52

B.     Plaintiff Has Not Alleged Particularized Facts Showing a Substantial Likelihood of Liability ......................................56

VI.     THE CLAIMS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS ALSO FAIL TO STATE A CLAIM ...............................57

VII.  THE JUDGMENT SHOULD BE MODIFIED OR CLARIFIED TO
       REFLECT THAT PLAINTIFF'S CLAIMS ARE DISMISSED
       WITH PREJUDICE..........................................................................61

VIII.  THE DISTRICT COURT ERRED BY NOT RULING THAT
       PLAINTIFF AND HIS COUNSEL ARE INADEQUATE
       REPRESENTATIVES FOR PURPOSES OF PURSUING A
       PURPORTED DERIVATIVE LAWSUIT....................................................64

CONCLUSION ........................................................................................67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Abbey v. Computer & Commc'ns Tech. Corp.,
    457 A.2d 368 (Del. Ch. 1983) ....................................................25, 26

Ajayi v. Aramark Bus. Servs.,
    336 F.3d 520 (7th Cir. 2003) .........................................................43

Algarin v. Town of Wallkill,
    421 F.3d 137 (2d Cir. 2005) ..........................................................19

Allison v. Gen. Motors Corp.,
    604 F. Supp. 1106 (D. Del. 1985) .................................................42

Amron v. Morgan Stanley Inv. Advisors, Inc.,
    464 F.3d 338 (2d Cir. 2006) ..........................................................54

AMSC Subsidiary Corp. v. FCC,
    216 F.3d 1154 (D.C. Cir. 2000).....................................................46

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984)..................................................20, 52, 54

Bacon v. United States,
    355 F. App'x 569 (2d Cir. 2009)...................................................19

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004)......................................................25, 56

Bellikoff v. PricewaterhouseCoopers, LLP,
    300 F. App'x 41 (2d Cir. 2008).............................................49, 50

Boeing Co. v. Shrontz,
    No. 11273, 1994 WL 30542 (Del. Ch. Jan. 19, 1994) ....................38, 41, 45

Boland v. Boland,
    31 A.3d 529 (Md. 2011) ........................................................*passim*

Boland Trane Assoc. v. Boland,
    No. 273284-V, 2012 Md. Cir. Ct. LEXIS 2
    (Md. Cir. Ct. Jun. 6, 2012).............................................................23

Boyce v. AIM Mgmt. Grp., Inc.,
    No. H-04-2587, 2006 WL 4671324 (S.D. Tex. Sept. 29, 2006)...................53

Braddock v. Zimmerman,
    906 A.2d 776 (Del. 2006) ..............................................................35

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ................................................9, 20, 30

Brickman v. Tyco Toys, Inc.,
    722 F. Supp. 1054 (S.D.N.Y. 1989) ...........................................58

Burks v. Lasker,
    441 U.S. 471 (1979)...............................................................27, 28

Caronia v. Philip Morris USA, Inc.,
    715 F.3d 417 (2d Cir. 2013) .......................................................22

Caston v. Hoaglin,
    No. 2:08-cv-200, 2009 WL 3078214 (S.D. Ohio Sept. 23, 2009) ...............42

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) .........................................................9

Copeland v. Lane,
    No. 5:11-cv-1058, 2012 WL 4845636
    (N.D. Cal. Oct. 10, 2012) ........................................26, 30, 35, 37

Cortec Indus., Inc. v. Sum Holding LLP,
    949 F.2d 42 (2d Cir. 1991) ...........................................................9

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984)...............................................................26, 27

Desimone v. Barrows,
    924 A.2d 908 (Del. Ch. 2007) ................................................58, 59

Donovan v. Penn Shipping Co., Inc.,
    536 F.2d 536 (2d Cir. 1976) ........................................................31

Drummond v. Tobin,
    No. 10CV1069, 2010 WL 5891674 (Mass. Super. Dec. 16, 2010) .............41

Elfenbein v. Gulf & W. Indus., Inc.,
    590 F.2d 445 (2d Cir. 1978) .................................................61, 62

FLI Deep Marine LLC v. McKim,
    Civ. A. No. 4138-VCN, 2009 WL 1204363
    (Del. Ch. Apr. 21, 2009)......................................30, 33, 47

Gagliardi v. Trifoods Int'l, Inc.,
    683 A.2d 1049 (Del. Ch. 1996) ....................................................59

Gamoran v. Neuberger Berman Mgmt. LLC,
    08 Civ. 12807 (S.D.N.Y.) ..................................................6, 10, 43

Gamoran v. Neuberger Berman Mgmt. LLC,
    No. 10 Civ. 6234 (LBS) (S.D.N.Y.) .....................................*passim*

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) ...................................................*passim*

Halebian v. Berv,
    590 F.3d 195 (2d Cir. 2009) ........................................................19

Halebian v. Berv,
    644 F.3d 122 (2d Cir. 2011) ..........................................................9

Halpert Enters., Inc. v. Harrison,
    No. 07-1144-cv, 2008 WL 4585466 (2d Cir. Oct. 15, 2008)......20, 36, 38, 40

Hartsel v. Vanguard Grp.,
    Civ. A. No. 5394, 2011 WL 2421003
    (Del. Ch. June 15, 2011).......................................................*passim*

In re Am. Int'l Grp. Inc.,
    965 A.2d 763 (Del. Ch. 2009), aff'd, 11 A.3d 228 (2011).....................49, 50

In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.,
    No. 12 Civ 4568, 2013 WL 1777766 (S.D.N.Y. Apr. 25, 2013) .................38

In re Boston Scientific Corp. S'holders Litig.,
    No. 02 Civ. 247, 2007 WL 1696995 (S.D.N.Y. June 13, 2007) .............36, 38

In re Caremark Int'l, Inc. Deriv. Litig.,
    698 A.2d 959 (Del. Ch. 1996) ....................................................58

In re Citigroup Inc. S'holder Deriv. Litig.,
    964 A.2d 106 (Del. Ch. 2009) ....................................................58

In re Direxion Shares ETF Trust,
    No. 09-cv-8011 (KBF), 2012 WL 717967 (S.D.N.Y. Mar. 6, 2012)............47

In re Gen. Motors Class E Stock Buyout Sec. Litig.,
    694 F. Supp. 1119 (D. Del. 1988) .................................................35

vi

In re Kauffman Mut. Fund Actions,
        479 F.2d 257 (1st Cir. 1973)..............................................................18, 21, 63

In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig.,
        773 F. Supp. 2d 330 (S.D.N.Y. 2011), aff'd sub nom.,
        504 F. App'x 23 (2d Cir. 2012) ..............................................................35, 51

In re Mut. Funds Inv. Litig.,
        519 F. Supp. 2d 580 (D. Md. 2007)................................................................5

In re Oracle Corp. Deriv. Litig.,
        824 A.2d 917 (Del. Ch. 2003) .................................................................25, 56

In re Par Pharm., Inc. Deriv. Litig.,
        750 F. Supp. 641 (S.D.N.Y. 1990) ................................................................25

In re Sonus Networks, Inc.,
        499 F.3d 47 (1st Cir. 2007).............................................................................63

In re Sunrise Sec. Litig.,
        916 F.2d 874 (3d Cir. 1990) ...........................................................................28

Iqbal v. Ashcroft,
        556 U.S. 662 (2009)........................................................................................58

Jones v. Harris Assocs. L.P.,
        559 U.S. 335 (2010).........................................................................26, 54, 57

JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,
        412 F.3d 418 (2d Cir. 2005) .....................................................................28, 43

Kamen v. Kemper Fin. Servs., Inc.,
        500 U.S. 90 (1991)..................................................................................passim

Kaplan v. Peat, Marwick, Mitchell & Co.,
        540 A.2d 726 (Del. 1988) ..........................................................................49, 50

Klein & Co. Futures, Inc. v. Bd. of Trade,
        464 F.3d 255 (2d Cir. 2006) ...........................................................................19

Krantz v. Prudential Inv. Fund Mgmt. LLC,
        305 F.3d 140 (3d Cir. 2002) ...........................................................................54

La. Mun. Police Emps.' Ret. Sys. v. Pyott,
        46 A.3d 313 (Del. Ch. 2012), rev'd, 2013 WL 1364695
        (Del. Apr. 4, 2013)..........................................................................32, 65, 66

vii

Lambrecht v. O'Neal,
    504 F. App'x 23 (2d Cir. 2012) ........................................................30, 35, 36

Levine v. Smith,
    591 A.2d 194 (Del. 1991) .......................................................................*passim*

Levner v. Saud,
    903 F. Supp. 452 (S.D.N.Y. 1994), <u>aff'd</u>, 61 F.3d 8 (2d Cir. 1995) .............21

Lewis v. Fuqua,
    502 A.2d 962 (Del. Ch. 1985) ....................................................................25

Litt v. Wycoff,
    Civ. A. No. 19083-NC, 2003 WL 1794724 (Del. Ch. Mar. 28, 2003) .........59

McBrearty v. Vanguard Grp., Inc.,
    No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009)........6, 7

Migdal v. Rowe Price-Fleming Int'l, Inc.,
    248 F.3d 321 (4th Cir. 2001) .......................................................................54

Mozes v. Welch,
    638 F. Supp. 215 (D. Conn. 1986).................................................................41

Mt. Moriah Cemetery v. Mortiz,
    No. 11431, 1991 WL 50149 (Del. Ch. Apr. 4, 1991), <u>aff'd</u>,
    599 A.2d 413 (Del. 1991) ...........................................................24, 30, 35, 36

Niagara Mohawk Power Corp. v.
    <u>Hudson River-Black River Regulating Dist.,</u>
    673 F.3d 84 (2d Cir. 2012) .....................................................................48, 51

Piven v. Ryan,
    No. 05 CV 4619, 2006 WL 756043 (N.D. Ill. Mar. 23, 2006).....................41

Protas v. Cavanaugh,
    Civ. A. No. 6555-VCG, 2012 WL 1580969 (Del. Ch. May 4, 2012)...........20

Rales v. Blasband,
    634 A.2d 927 (Del. 1993)......................................................................29, 30

Rand v. Anaconda-Ericsson,
    794 F.2d 843 (2d Cir. 1986) ........................................................................28

RCM Sec. Fund, Inc. v. Stanton,
    928 F.2d 1318 (2d Cir. 1991) .........................................................15, 21, 28

Reynolds v. Giuliani,
    506 F.3d 183 (2d Cir. 2007) ..........................................................................64

Scattered Corp. v. Chi. Stock Exch.,
    701 A.2d 70 (Del. 1997)........................................................................*passim*

Seidl v. Am. Century Cos.,
    713 F. Supp. 2d 249 (S.D.N.Y. 2010), aff'd,
    427 F. App'x 35 (2d Cir. June 17, 2011)....................................42, 52, 55, 56

Seidl v. Am. Century Cos.,
    No. 10-4152-CV-W-SOW, 2012 WL 7986873
    (W.D. Mo. Oct. 31, 2012)..............................................................................21

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995) .............................................................24, 35

Semtek Int'l Inc. v. Lockheed Martin Corp.,
    531 U.S. 497 (2001)......................................................................................63

Smith v. Ayers,
    977 F.2d 946 (5th Cir. 1992) ..................................................................64, 66

Spiegel v. Buntrock,
    571 A.2d 767 (Del. 1990)......................................................................*passim*

State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,
    374 F.3d 158 (2d Cir. 2004) ........................................................................51

Stone v. Ritter,
    911 A.2d 362 (Del. 2006).............................................................................57

Stoner v. Walsh,
    772 F. Supp. 790 (S.D.N.Y. 1991) ..............................................................38

Stotland v. GAF Corp.,
    469 A.2d 421 (Del. 1983).............................................................................30

Strougo v. Bassini,
    112 F. Supp. 2d 355 (S.D.N.Y. 2000) ..........................................................42

Travelers Ins. Co. v. Henry,
    470 F.3d 56 (2d Cir. 2006) ..........................................................................22

UBS v. Union de Empleados,
    No. 12-1208, 2013 WL 1402320 (June 24, 2013).........................................19

United States v. Morgan,
    380 F.3d 698 (2d Cir. 2004) .......................................................................19

W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp.,
    914 A.2d 636 (Del. Ch. 2006) ..................................................................62

Werbowsky v. Collomb,
    766 A.2d 123 (Md. 2001) ..........................................................................23

Wodka v. Causeway Capital Mgmt. LLC,
    No. BC463623 (Cal. Super. Ct. Jun. 14, 2013) ................................52, 55, 56

Wood v. Baum,
    953 A.2d 136 (Del. 2008) ..........................................................................59

Zapata Corp. v. Maldonado,
    430 A.2d 779 (Del. 1981) .............................................................24, 26, 34

**Statutes & Other Authorities:**

15 U.S.C. § 80a-35(b) ......................................................................................26

18 U.S.C. § 1955 ...........................................................................3, 10, 11, 56

18 U.S.C. § 1962(c) ..........................................................................................3

17 C.F.R. § 270.12b-1(c) ................................................................................53

Del. Code Ann. tit. 12, § 3801(d) .............................................................16, 52

Del. Code Ann. tit. 12, § 3806(i) ....................................................................57

Fed. R. Civ. P. 12(b)(6)................................................................................2, 57

Fed. R. Civ. P. 15(a)........................................................................................61

Fed. R. Civ. P. 23.1 ...................................................................................*passim*

Fed. R. Civ. P. 41 ...........................................................................................63

Rest. of Judgments § 49, cmt. b (1942) .........................................................63

18A Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 4437 (2d ed. 2002)...................................62

## JURISDICTIONAL STATEMENT

The Independent Trustee Defendants supplement Appellant's Jurisdictional Statement to add that they filed their notice of cross-appeal on May 3, 2013, A-24, less than 14 days after plaintiff's April 23 notice of appeal.

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether the district court correctly held that the Delaware business judgment rule applies to this demand refused action concerning a Delaware business trust.

2.  Whether, in light of plaintiff's decision to make demand on the board of trustees, the district court correctly rejected as irrelevant plaintiff's allegations that the board of trustees was too conflicted to consider demand in the first place.

3.  Whether the district court correctly concluded that plaintiff's disagreements with the board's thorough demand review process as alleged in plaintiff's August 24, 2011 Verified Derivative and Class Action Complaint ("Gamoran III Complaint" or "Complaint") and his July 16, 2012 Amended Verified Derivative Complaint ("Gamoran IV Complaint" or "Amended Complaint") fail to plead facts with sufficient particularity to overcome the business judgment rule and Fed. R. Civ. P. 23.1.

4.  Whether plaintiff waived his legally irrelevant attacks on the substance of the board's carefully reasoned decision to reject demand.

5.     Whether, as several courts addressing similar lawsuits by plaintiff's counsel have held, plaintiff's allegations regarding the board of trustees' supposed *ex ante* conflicts fail to rebut the presumption of the business judgment rule.  The district court did not reach this issue.

6.     Whether the claims against the Independent Trustee Defendants in the Complaint and the Amended Complaint fail to state a claim and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  The district court did not reach this issue.

7.     Whether the judgment should be modified or clarified to ensure there is no doubt that the dismissal is with prejudice at least on the issue of wrongful refusal.

8.     Whether plaintiff and his counsel are inadequate representatives of the Fund's shareholders within the meaning of Fed. R. Civ. P. 23.1.  The district court did not reach this issue.

## STATEMENT OF THE CASE

This is a purported derivative lawsuit brought by a shareholder in the Neuberger Berman International Fund, which was later reorganized into the Neuberger Berman Institutional Fund.  Plaintiff alleged that defendants caused the Fund to violate federal and state anti-gambling laws by investing in two gaming companies traded on the London Stock Exchange.

Plaintiff asserted that, by thus causing the Fund to violate 18 U.S.C. § 1955 repeatedly, defendants conducted the affairs of the Fund through a "pattern of racketeering activity" in violation of 18 U.S.C. § 1962(c).  Based on the same underlying allegations, the Amended Complaint additionally asserts common law claims for breach of fiduciary duty, negligence, waste, and a breach of a management contract.

In addition to a number of similar actions filed by his counsel, this plaintiff has filed three separate lawsuits and four complaints regarding the same allegations.  His first lawsuit was voluntarily dismissed in May 2009.  On May 11, 2011, the district court dismissed plaintiff's second lawsuit when plaintiff made a mid-suit demand with respect to certain claims he now asserts (but not the breach of contract claim), and thus legally conceded the independence of the board of directors.

Before the board had finished considering his demand, plaintiff filed his first complaint in the instant action (his third overall) on August 24, 2011 (the Complaint), alleging that the board had effectively rejected his demand by not yet responding to it.  The district court dismissed that complaint as premature on June 12, 2012, but afforded plaintiff an opportunity to replead.

Plaintiff then filed his fourth complaint (the Amended Complaint) on July 16, 2012.  The district court dismissed the complaint on March 29, 2013 without prejudice.  The court dismissed plaintiff's RICO claims on the basis that plaintiff did not allege any viable predicate criminal violation.  The court dismissed plaintiff's breach of fiduciary duty, negligence, waste, and RICO claims on the basis that he did not plead facts with sufficient particularity to overcome the strong presumption of the Delaware business judgment rule and Fed. R. Civ. P. 23.1.  The court dismissed plaintiff's breach of contract claim, to the extent it was not included in plaintiff's demand letter to the board, for failure to make pre-suit demand.

Plaintiff appealed and defendants cross-appealed.

## STATEMENT OF FACTS

### A.    The Parties

The Trust is a statutory trust organized under Delaware law and a registered investment company under the Investment Company Act of 1940 (the "ICA").  A-343, ¶ 12.  The Fund is one of several funds or "series" offered by the Trust.  A-343,  ¶ 14.  See generally In re Mut. Funds Inv. Litig., 519 F. Supp. 2d 580, 588-89 & n.11 (D. Md. 2007) (describing multi-series investment company structure).

Defendants John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, and Peter P. Trapp are current or former independent trustees of the trust (the "Independent Trustee Defendants").  A-345, ¶ 22.

Defendant Neuberger Berman Management LLC is adviser to the Fund, and Defendant Neuberger Berman LLC is a sub-adviser.  A-344, ¶¶ 16-17.  Defendant Benjamin Segal was the portfolio manager of the Fund and Defendants Peter E. Sundman and Jack L. Rivkin were inside directors of the Fund (collectively, the "Neuberger Defendants").  A-345, ¶¶ 19-21.

Plaintiff Benjamin M. Gamoran is a shareholder in the Fund.  A-343, ¶ 12.

### B.    Plaintiff's Litigation History

This appeal arises after the district court dismissed plaintiff's fourth complaint predicated on the same theory: that the Fund was injured because, in

5

2005 and 2006, it invested in London Stock Exchange-traded shares of two companies – 888 Holdings PLC ("888") and NETeller Plc ("NETeller") – that offered or facilitated online gambling to U.S. players.  SPA-14.  Plaintiff asserts that these passive investments were illegal under federal and state law and caused "significant investment losses."  A-341-43, ¶¶ 5, 9.  Plaintiff's counsel has filed numerous other complaints in other cases based on the same theory.  SPA-15.

**Gamoran I**

Plaintiff's first attempt to bring suit on this theory was filed on December 12, 2008, Gamoran v. Neuberger Berman Mgmt. LLC, 08 Civ. 12807 (S.D.N.Y.) ("Gamoran I").  A-76.  On April 2, 2009, the Honorable Judge Denise L. Cote dismissed a case with similar allegations brought by the same plaintiff's attorney against another fund complex, holding that the allegations did not support a RICO violation.  McBrearty v. Vanguard Grp., Inc., No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. Apr. 2, 2009).  In light of this decision, plaintiff voluntarily dismissed Gamoran I on May 19, 2009, with the stipulation that he could refile within six months of the Second Circuit's decision on the McBrearty appeal.  A-240-43.  The Second Circuit affirmed Judge Cote's McBrearty decision on November 23, 2009, 353 F. App'x 640, and a mandate issued on January 20, 2010.

**Gamoran II and Plaintiff's Demand**

Nearly six months later, on July 16, 2010, plaintiff brought his second suit, Gamoran v. Neuberger Berman Mgmt. LLC, No. 10 Civ. 6234 (LBS) (S.D.N.Y.) ("Gamoran II"), A-363, ¶ 116, which was substantially similar to Gamoran I, except that it omitted the RICO claim rejected in McBrearty. A-100-28. Although the action was initially filed in state court, Defendants removed to the Southern District of New York, which denied plaintiff's motion to remand. See Gamoran II, 2010 WL 4537056 (S.D.N.Y. Nov. 8, 2010). The Gamoran II complaint alleged that demand was excused under Delaware's futility exception because a majority of the board lacked independence. See A-117, at ¶¶ 93-121. Yet, one business day before defendants' motions to dismiss in Gamoran II were due, plaintiff changed course and sent a demand letter to the Trust's board via defense counsel. A-363, ¶ 117; A-217-18. Recognizing that a mid-suit demand concedes the issue of demand futility under Delaware law, the district court, over plaintiff's objections, dismissed Gamoran II. See Order, Gamoran II, ECF No. 41 (May 11, 2011).

Meanwhile, on March 24, 2011, as briefing on the motions to dismiss was underway, the board, through counsel for the Independent Trustee Defendants, notified plaintiff's counsel that the demand had been referred to the board for its consideration, requested information on Mr. Gamoran's stock ownership to confirm that he had the requisite standing, and requested that plaintiff "submit any

additional details, analysis, or documentation regarding the subject matter . . . that would assist the Board in reviewing the Demand." A-220; A-364, ¶ 118. Plaintiff's counsel replied by letter dated April 22, 2011, attaching copies of Mr. Gamoran's stock account information and referring the board to plaintiff's prior pleadings for additional information as to the claims. A-222-23; A-364, ¶ 119. He also requested to be informed of who would be conducting the investigation. A-222-23; A-364, ¶ 119. Plaintiff's counsel made no further relevant communication with the board until he filed his next lawsuit.

**Gamoran III and Plaintiff's Premature Lawsuit**

On August 24, 2011, plaintiff commenced this action in the United States District Court for the District of Delaware. A-30. It was subsequently transferred to the Southern District of New York pursuant to defendants' motion. A-209.

The board requested that Mr. Gamoran withdraw the Gamoran III suit because it was premature, as the board was reviewing plaintiff's demand. A-225; A-227. The board had appointed a Special Demand Committee ("SDC"), which began investigating plaintiff's demand in July 2011 after careful efforts were made at selecting independent counsel. SPA-5; A-227. The board had also earlier directed that tolling agreements be executed. A-214, ¶ 3; A-227. Mr. Gamoran refused to withdraw his suit, A-232, so defendants moved to dismiss. A-211-13;

8

A-233-34.  The Honorable Judge Thomas P. Griesa granted defendants' motion on

June 12, 2012.  SPA-1-13.

**The Special Demand Committee's Investigation and Recommendation**

The SDC consisted of three persons – Martha Clark Goss, George Morriss,

and Michael Knetter – who all joined the board *after* the Fund had sold all of the

888 and NETeller holdings.  A-453-54;[2] A-366, ¶ 130.

The SDC was charged to investigate, review, and analyze the facts,

allegations, and circumstances subject of the plaintiff's demand, as well as any

related facts, allegations, and circumstances.  A-453; A-366, ¶ 127.  The SDC

retained Daniel Bookin of O'Melveny & Myers ("O'Melveny") to serve as its

independent counsel.  A-454.  Neither Mr. Bookin nor O'Melveny had any pre-

existing relationship with any defendant or the Trust.  A-454.

Between July 2011 and February 2012, the SDC, with assistance from

O'Melveny, conducted a thorough investigation of the claims asserted in plaintiff's

---

[2]      Plaintiff relied in his Amended Complaint on the letter the board sent refusing his demand (the "Demand Refused Letter").  See A-366-68, ¶¶ 129-30, 136.  As such, it is deemed incorporated by reference.  See Halebian v. Berv, 644 F.3d 122, 132 n.10 (2d Cir. 2011); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Scattered Corp. v. Chi. Stock Exch., 701 A.2d 70, 75 n.24 (Del. 1997) (court "must presume [statement in demand refusal letter] to be true absent a particularized allegation rebutting [the] statement"), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000).  It is similarly proper for district courts to take judicial notice of publicly filed documents such as the Trust Instrument, A-460-86, the Fund's Statement of Additional Information ("SAI"), A-488-99, A-501-12, and the Fund's Management Agreement, A-514-24. See Cortec Indus., Inc. v. Sum Holding LLP, 949 F.2d 42, 47-48 (2d Cir. 1991).

demand. A-454. Among other things, at the SDC's direction, O'Melveny collected and processed approximately 2.4 million pages of electronic data, searched and reviewed over 112,000 documents, conducted 15 substantive interviews, and performed extensive legal research and reviewed the filing in Gamoran I-III. A-454. The SDC also extended the tolling agreement that was in place with the named defendants. A-454-55.

The SDC held seven meetings with O'Melveny in which the attendees discussed the results of the legal research, document review, and witness interviews. A-455. Ms. Goss, the SDC chair, also communicated frequently with O'Melveny attorneys. A-455.

After thorough consideration and discussion, on February 20, 2012, the SDC determined that the prosecution of the claims asserted in plaintiff's demand letter and related claims asserted in the prematurely-filed Gamoran III Complaint would not be in the interests of the Fund or the shareholders. A-455. The SDC considered, among other things, the merits of the claims, the likely disruption to the Fund and Trust that would result from such a suit going forward, and the net financial impact on the Fund. A-455. The SDC determined, among other things:

- the evidence did not support that the portfolio manager and analyst responsible for the decisions to invest in 888 and NETeller knew or should have known that those investments violated 18 U.S.C. § 1955, and in fact they believed the companies' business activities were legal under the law as it existed at the time of the subject investments;

10

- the responsible portfolio manager and analyst engaged in an extensive and well-researched decision-making process before making the investments, including company due diligence and legislative investigation and tracking;

- the 888 and NETeller investments were not unduly risky given the information available at the time, the fact that the investments each amounted to only one or two percent of the Fund's total portfolio, and the fact that large numbers of peer mutual funds were invested in the same or similar companies during the relevant period;

- the Trustees and the adviser's executives exercised proper oversight;

- the Trustees were not aware of the specific investments at issue until after they were liquidated, and had in place adequate processes to monitor the Fund's investment performance;

- there was no evidence of self-dealing or bad faith because no defendant personally owned stock in either 888 or NETeller and there was no evidence of recklessness or a conscious disregard of the law; and

- the passage of new anti-gambling legislation caused the Fund's losses – not any alleged violation of § 1955.

A-455-57.  In addition to the lack of evidence supporting plaintiff's claims, the SDC also found other business reasons not to pursue the claims, such as the existence of exculpatory and indemnification provisions in the Trust's Declaration of Trust, insurance coverage issues, and the likelihood that the suit would hamper the ability of individuals valuable to the continued success of the Fund to effectively carry out their duties.  A-457.

The SDC described its investigation and presented in detail its analysis and reasons for its recommendation to the board on February 21, 2012.  A-457.  After

11

deliberation and discussion, the board (with non-independent members recused) adopted the SDC's recommendation. A-457. On March 16, 2012, the board formally notified plaintiff that it refused his demand, and O'Melveny furnished plaintiff with the Demand Refused Letter summarizing the investigation and reasons for refusing demand. A-457.

**Plaintiff's Last Complaint (<u>Gamoran IV</u>)**

Plaintiff filed his final Amended Complaint on July 16, 2012, alleging wrongful refusal and asserting the five derivative counts from his <u>Gamoran III</u> complaint – breach of fiduciary duty, negligence, waste, and two provisions of civil RICO – and one never-before raised claim against the Neuberger Defendants for breach of their investment advisory contract. A-340-77.

The <u>Gamoran IV</u> Complaint's allegations regarding the board's refusal of demand fell into three categories.

First, plaintiff challenged the independence of the board, asserting that it is "interested in blocking the Fund from vindicating its rights," A-366, ¶ 127, that two-thirds of the board members are "interested persons antagonistic to the pursuit of the claims" because they are defendants or officers of defendants, A-366, ¶ 128, that the SDC members were "appointed to his or her position" by the investment adviser and receive substantial income from service on the boards within the Trust, A-366, ¶ 131, that the board members "face substantial conflicts of interest" in that

12

they are exposed to civil and criminal liability for causing or permitting the investments, A-368-69, ¶¶ 137-38, and that the structure of the Trust creates conflicts because recovery in this lawsuit could allegedly harm other funds the trustees serve, A-368-70, ¶¶ 137, 139, 145-48.

Second, plaintiff criticized the procedures by which the board made its decision. Plaintiff observed that the SDC "was not given final authority to determine [his] demand," and instead made a recommendation to the board, which retained (and exercised) final authority to act on plaintiff's demand. A-366, ¶ 129. Plaintiff further alleged that the SDC's investigation was conducted "in complete secrecy," A-367, ¶ 133, that plaintiff and his counsel were barred from participating or otherwise being informed, A-367, ¶¶ 133-35, that the defendants denied plaintiff access to the SDC's investigation files, A-367, ¶ 134, and that the SDC delegated the tasks of conducting witness interviews to counsel, A-367, ¶ 135. Plaintiff also repeated assertions from earlier complaints that the board declined to furnish him copies of the tolling agreements the board procured, A-364-65, ¶¶ 121-125, and allegedly did not communicate frequently enough with plaintiff's counsel. A-363-64, ¶¶ 118-120.

Third, plaintiff included a conclusory paragraph challenging the premises of the board's decision against bringing suit. A-367-68, ¶ 136.

## C.    The Decision Below

The defendants moved to dismiss the <u>Gamoran IV</u> Complaint on August 24, 2012.  A-378-79; A-447-49.

Judge Griesa granted the motions and dismissed the complaint on March 29, 2013.  SPA-14-26.  The district court first dismissed the RICO claim for failure to plead viable predicate acts.  SPA-22.  The district court then dismissed the RICO, fiduciary duty, waste, and negligence claims on the basis that plaintiff did not plead facts with sufficient particularity to overcome the strong presumption of the Delaware business judgment rule.  SPA-25.  The district court also dismissed plaintiff's breach of contract claim, to the extent it was not included in plaintiff's demand letter, for failure to make pre-suit demand.  SPA-25.  Finally, the district court labeled its decision as "without prejudice," stating: "it is not entirely clear whether or not . . . [plaintiff's] illegality theory . . . could someday prove to be valid."  SPA-25-26.

## D.    The Appeals

Plaintiff appealed on April 23, 2013, A-535, and the Independent Trustee Defendants cross-appealed on May 3, 2013.  A-539.

14

## SUMMARY OF ARGUMENT

This case is about plaintiff's obstinate refusal to accept that, absent highly unusual circumstances not present here, a company's board of directors rather than a single shareholder determines whether to bring corporate litigation. See, e.g., Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101-02 & n.7 (1991); Spiegel v. Buntrock, 571 A.2d 767, 772-73 (Del. 1990).

It is undisputed that Delaware substantive law controls this case, and that plaintiff made a demand on the board of trustees.

The district court correctly held that, in such cases, Delaware law mandates application of the business judgment rule – a presumption that the board made its decision on an informed basis, in good faith, and in belief that the action was in the company's best interest. SPA-23. As this Court has stated, few, if any, plaintiffs meet the burden of rebutting the business judgment rule in this context. RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1328 (2d Cir. 1991). Plaintiff's entreaties for the Court to ignore the business judgment rule and apply irrelevant Maryland law, or inapposite Delaware precedent from cases where demand has previously been excused, or some other standard, are baseless.

The district court also correctly concluded that, by making demand, plaintiff legally conceded that the directors were sufficiently independent to consider it. SPA-24. Accordingly, the district court properly rejected plaintiff's allegations

15

about the board's supposed conflicts of interest that existed before he made demand.  SPA-24.  In any event, plaintiff's conflicts allegations are little more than generalized attacks on the structure of the mutual fund industry.  Such allegations have been repeatedly rejected, including in other similar cases filed by plaintiff's counsel, one of which was affirmed by the Delaware Supreme Court.  Plaintiff's independence allegations also are precluded by statute.  Del. Code Ann. tit. 12, § 3801(d).

The district court properly rejected plaintiff's sparse allegations regarding the board's actual process of reviewing his demand.  SPA-24.  How to investigate and respond to a shareholder demand is a matter for the board's business judgment.  And the process the board employed here was extremely thorough and culminated in a detailed letter to plaintiff's counsel summarizing the board's conclusions.  Plaintiff's assertions that the board took too long, did not communicate with him frequently enough or furnish him certain documents, and that it delegated certain tasks to a committee are misguided quibbles with the board's process that do not come close to overcoming the business judgment rule.  Plaintiff's assertion that the board intentionally delayed its investigation to extinguish his claims is a groundless accusation unsupported by any particularized facts.  Indeed, plaintiff himself created any statute of limitations issue by deliberately refusing to make demand for years.  And, as the district court held, plaintiff's questions about the

16

scope of the tolling agreements the board conscientiously arranged to enable it to properly investigate *despite* the tardiness of plaintiff's demand hardly suffice to overcome the business judgment rule.  Plaintiff's further suggestion that it was somehow improper for the board to note in one of its district court papers that it would consider judicial precedent is baffling.

Plaintiff has abandoned the attacks he raised below on the substance of the board's decision, which in any event were legally irrelevant and based on mere mischaracterizations of the board's Demand Refused Letter.

Thus, the district court's ruling that plaintiff did not plead wrongful refusal of demand in conformity with Fed. R. Civ. P. 23.1 must be affirmed, and this is sufficient to resolve plaintiff's appeal.

This Court may also affirm the district court's judgment on the ground that plaintiff failed to state a viable claim against the Independent Trustee Defendants as a matter of law.  There is no allegation that the Independent Trustee Defendants made the challenged investments, and plaintiff has not sufficiently alleged a proper failure of oversight claim or any other claim against them.  Indeed, plaintiff's complaints allege next to nothing pertaining specifically to the trustees.

The Independent Trustee Defendants request that the Court modify the district court's judgment to more clearly reflect what the district court seemingly intended and should have intended: that, while the merits of the Fund's underlying

17

claims are dismissed without prejudice, the dismissal is with prejudice to plaintiff's wrongful refusal allegations.  See In re Kauffman Mut. Fund Actions, 479 F.2d 257, 267 (1st Cir. 1973).  The district court unquestionably declined to grant plaintiff leave to amend his wrongful refusal allegation, and nothing in the district court's opinion or applicable law suggests that plaintiff should be allowed to continue to litigate this matter.

The Independent Trustee Defendants also adopt the Neuberger Defendants' argument that the action should be dismissed with prejudice.

Additionally or alternatively, this Court should direct the district court to enter a finding that plaintiff and his counsel do not fairly and adequately represent the interests of shareholders pursuant to Fed. R. Civ. P. 23.1.  Plaintiff's pointless, costly, and improper maneuvers have caused the Fund a great deal of completely unnecessary effort and expense, and it is well past time for plaintiff's vexatious litigation to end.

## ARGUMENT

**STANDARD OF REVIEW**

The district court's legal rulings are reviewed *de novo*.  Because the district court did not address the Independent Trustee Defendants' contention that plaintiff and his counsel do not fairly and adequately represented the interests of the Fund's

shareholders, this issue also is reviewed *de novo*.  Bacon v. United States, 355 F. App'x 569, 571 (2d Cir. 2009).

This Court reviews dismissals pursuant to Fed. R. Civ. P. 23.1 for abuse of discretion where determination of the sufficiency of the allegations depends on the circumstances of the individual case.  See, e.g., Halebian v. Berv, 590 F.3d 195, 203 (2d Cir. 2009).  The issue of the proper standard of review for a dismissal pursuant to Fed. R. Civ. P. 23.1 is currently before the Supreme Court.  See UBS v. Union de Empleados, No. 12-1208, 2013 WL 1402320 (June 24, 2013) (granting certiorari).

A district court's decision to dismiss with or without prejudice is reviewed for abuse of discretion.  Klein & Co. Futures, Inc. v. Bd. of Trade, 464 F.3d 255, 262 (2d Cir. 2006).

This Court may "affirm the judgment of the district court on any ground with support in the record, even one raised for the first time on appeal."  United States v. Morgan, 380 F.3d 698, 701 n.2 (2d Cir. 2004); Algarin v. Town of Wallkill, 421 F.3d 137, 139 (2d Cir. 2005).

## I.   THE DISTRICT COURT CORRECTLY HELD THAT DELAWARE'S BUSINESS JUDGMENT RULE APPLIED

The district court properly recognized that where, as here, a plaintiff makes demand on a board of a Delaware entity, the board's refusal of that demand is protected by the business judgment rule.  See SPA-10; SPA-23 (citing cases).

"The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation" and is "part of the responsibility of the board of directors." Spiegel v. Buntrock, 571 A.2d 767, 773 (Del. 1990).[3]  Accordingly, absent extraordinary circumstances, a single shareholder cannot institute an action on behalf of a corporation.  Instead, where, as here a shareholder has made demand, a board's decision to reject demand is entitled to the benefit of the business judgment rule.[4]

The business judgment rule presumes that the board made its decision "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." Spiegel, 571 A.2d at 774.  And it shields the board's decision "unless the shareholder plaintiff can carry the considerable burden of showing that the decision not to bring the lawsuit was made in bad faith or was

---

[3]    See also Levine v. Smith, 591 A.2d 194, 200 (Del. 1991), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000); Grimes v. Donald, 673 A.2d 1207, 1215 (Del. 1996), overruled on other grounds by Brehm, 746 A.2d at 253.  The standards used to determine demand issues "when a plaintiff sues on behalf of a statutory trust are the same as those applied to derivative suits by corporate stockholders." Protas v. Cavanaugh, Civ. A. No. 6555-VCG, 2012 WL 1580969, at *8 (Del. Ch. May 4, 2012); Hartsel v. Vanguard Grp., Civ. A. No. 5394, 2011 WL 2421003, at *20 (Del. Ch. June 15, 2011) (similar), aff'd, 38 A.3d 1254 (Del. 2012).

[4]    See, e.g., Levine, 591 A.2d at 209 ("where demand on a board has been made and refused, [courts] apply the business judgment rule" (citation and quotation and other marks omitted)); Aronson v. Lewis, 473 A.2d 805, 813 (Del. 1984), overruled on other grounds by Brehm, 746 A.2d at 253; Halpert Enters., Inc. v. Harrison, No. 07-1144-cv, 2008 WL 4585466, at *1 (2d Cir. Oct. 15, 2008).

20

based on an unreasonable investigation." <u>RCM Sec. Fund, Inc. v. Stanton</u>, 928 F.2d 1318, 1328 (2d Cir. 1991).

"[F]ew, if any, plaintiffs surmount this obstacle." <u>Id.</u>  And any attempts to do so are subject to the "exceptional" pleading requirements of Fed. R. Civ. P. 23.1, which require a plaintiff to plead with particularity.  <u>See</u> SPA-10-11; <u>In re Kauffman Mut. Fund Actions</u>, 479 F.2d 257, 263 (1st Cir. 1973) ("[T]he stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case.").[5]

Apparently recognizing that his complaints fall well short of this exacting standard, plaintiff suggested that the district court, and now proposes that this Court, disregard controlling Delaware law and create an entirely new rule: that defendants should bear the burden of establishing that the board's decision to refuse demand was "beyond reproach."  <u>See</u> Appellant's Br. at 36.

In support of this argument, plaintiff relies primarily on decisions construing Maryland law – <u>Boland v. Boland</u>, 31 A.3d 529 (Md. 2011), and <u>Seidl v. Am. Century Cos.</u>, No. 10-4152-CV-W-SOW, 2012 WL 7986873 (W.D. Mo. Oct. 31, 2012) ("<u>Seidl II</u>") – and a handful of Delaware "demand excused" cases.  <u>See</u> Appellant's Br. at 30-32, 35-38, 40-41, 44-45, 47-49.  He also suggests that the

---

[5]    <u>See also</u> <u>Levner v. Saud</u>, 903 F. Supp. 452, 456 (S.D.N.Y. 1994) (Rule 23.1 is "more onerous" than ordinary pleading standards), <u>aff'd</u>, 61 F.3d 8 (2d Cir. 1995).

Court should ignore the business judgment rule because this case "involves a mutual fund rather than a conventional corporation." Id. at 36-37, 47.

Plaintiffs' contentions do not come close to providing a valid basis for ignoring controlling Delaware law governing demand refused cases like this one.

## A.    Maryland Law Is Irrelevant

It is undisputed that Delaware law controls this case. See SPA-21 (noting that, because the Trust is organized in Delaware, "the parties agree that Delaware substantive law governs").

Accordingly, because the Delaware courts have authoritatively and repeatedly articulated the relevant principles of controlling Delaware law, it would be error to look to Maryland law for any reason and the district court correctly declined to do so.[6]

Notwithstanding plaintiff's convoluted arguments, see, e.g., Appellant's Br. at 36-38, moreover, Boland is directly contrary to Delaware law in this context. Under Delaware law, in a demand *required* case such as this, the "presumption" of

---

[6]    Even assuming arguendo that Boland intended to follow Delaware law (which it clearly did not), "federal courts must follow the holdings of the highest state court in applying state law," which "supersedes" all other interpretations. Travelers Ins. Co. v. Henry, 470 F.3d 56, 62 (2d Cir. 2006). See also Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 449 (2d Cir. 2013) (federal courts must also "give due regard to the decisions of the state's lower courts"). Because Delaware's courts have spoken as to what Delaware law says, a Maryland court's views about those issues are irrelevant.

the business judgment rule – that "the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action taken was in

the best interests of the company" – is fully applicable.  Spiegel, 571 A.2d at 774

(citations omitted).  As a result, "[t]he burden is on the party challenging the

decision to establish facts rebutting this presumption."  Id. (citation and internal

quotation and other marks omitted).  In direct conflict with Delaware law, Boland

(also a demand required case, 31 A.3d at 541 n.12) held that, under Maryland law,

"directors are entitled to *no* presumption" of independence and good faith, and

instead bear the burden of proof on these issues.  Boland, 31 A.3d at 561 (emphasis

added).  See also id. at 556, 557, 563, 567.[7]

## B.      Delaware Demand Excused Cases Are Irrelevant

Delaware law recognizes two distinct categories of cases – demand required

cases and demand excused cases – that plaintiff simply confuses.

---

[7]      On remand, the Boland trial court recognized that the Maryland Court of
Appeals created "new standards to be used" and contrasted the new Maryland rule
with established Delaware case law.  See Boland Trane Assoc. v. Boland, No.
273284-V, 2012 Md. Cir. Ct. LEXIS 2, *33 n.19 (Md. Cir. Ct. Jun. 6, 2012).
Maryland imposes a near-universal demand requirement under which shareholders
must make demand even in circumstances where the board is conflicted, Boland,
31 A.3d at 550 n.25 (citing Werbowsky v. Collomb, 766 A.2d 123, 135 (Md.
2001)).  So it is unsurprising that making demand under Maryland law would not
concede the board's independence.  By contrast, a Delaware corporate shareholder
who believes demand is futile may file a complaint alleging demand futility in a
broader array of circumstances.  Grimes, 673 A.2d at 1218 ("Delaware law does
not require demand in every case because Delaware does have the mechanism of
demand excusal . . . ." (footnotes omitted)).

In the usual case (a demand required case) where a shareholder may not pursue a derivative lawsuit without first making demand on the board, a board is entitled to decide issues relating to the shareholder litigation itself or delegate that decision to an independent committee, and the decision regarding the litigation is accorded the presumption of the business judgment rule.  See Seminaris v. Landa, 662 A.2d 1350, 1352-53 (Del. Ch. 1995); Spiegel, 571 A.2d at 776-77; Mt. Moriah Cemetery v. Mortiz, No. 11431, 1991 WL 50149, at *2-3 (Del. Ch. Apr. 4, 1991) (business judgment rule applied where special committee investigated demand and board ultimately adopted its recommendation), aff'd, 599 A.2d 413 (Del. 1991).

Even in the other category of cases – where demand is excused because a majority of the board is interested or otherwise incapable of responding to the demand and hence a demand would be futile (a demand excused case) – the board may appoint an independent special litigation committee with full power to respond to the demand and the decision of that special litigation committee may be accorded substantial deference, albeit subject to potentially enhanced scrutiny.  See Zapata Corp. v. Maldonado, 430 A.2d 779, 788 (Del. 1981).

Because there is no basis to allege demand futility here – a point plaintiff legally conceded by making demand, see, e.g., Spiegel, 571 A.2d at 775 – this is indisputably a demand required case.

And the Delaware Supreme Court has made abundantly clear that the more "searching" standard applied in demand *excused* cases such as those on which plaintiff relies (and on which <u>Boland</u> also relies) is inapplicable in demand *required* actions such as this.  <u>See</u> <u>Beam v. Stewart</u>, 845 A.2d 1040, 1054-55 (Del. 2004) (explaining that the "'Caesar's wife' – 'above reproach'" standard used by <u>Boland</u> applies in demand *excused* cases).[8]  That is because, in demand required cases, the board is "presumed to be independent" whereas in demand excused cases, a special litigation committee may "seek dismissal of a derivative suit brought against their director-colleagues in a setting where" (unlike in demand-made cases such as this) "presuit demand is already excused."  <u>Beam</u>, 845 A.2d at 1055.

Accordingly, the demand excused cases on which plaintiff relies are completely inapposite.  One example is <u>Abbey v. Computer & Communications Technology Corp.</u>, 457 A.2d 368 (Del. Ch. 1983).  Notwithstanding plaintiff's

---

[8]    <u>Beam</u> distinguished by name two of the Delaware cases on which plaintiff relies – <u>In re Oracle Corp. Deriv. Litig.</u>, 824 A.2d 917, 923 (Del. Ch. 2003), and <u>Lewis v. Fuqua</u>, 502 A.2d 962, 964 (Del. Ch. 1985).  <u>See</u> <u>Beam</u>, 845 A.2d at 1054-55.  A third case cited by plaintiff, <u>In re Par Pharm., Inc. Deriv. Litig.</u>, 750 F. Supp. 641 (S.D.N.Y. 1990), also is easily distinguishable.  Among other differences, the corporation was organized under New Jersey (not Delaware) law, <u>id.</u> at 646 n.11, the complaint before the court was brought by plaintiffs who had not made a demand, <u>id.</u> at 644 n.3, the court followed authority indicating that (in contrast to Delaware law) merely naming directors as defendants sufficed to excuse demand, <u>id.</u> at 646, and the litigation committee failed to hire independent outside counsel, <u>id.</u> at 647.

argument, Appellant's Br. at 42, Abbey was a unique demand excused case of no help to plaintiff.[9]  The board in Abbey "conceded its disqualification" and appointed an entirely new director to whom the board delegated complete authority to respond to the demand.  See id.  The court concluded that "the board was satisfied that the situation was one in which it should step aside and avail itself of the procedure authorized under Zapata in cases of board disqualification."  Id. There are no remotely similar circumstances here.  See also Copeland v. Lane, No. 5:11-cv-1058, 2012 WL 4845636, at *7 n.1 (N.D. Cal. Oct. 10, 2012) (Delaware law) (distinguishing Abbey).

### C.    Delaware Law Applies to Derivative Actions by Investment Company Shareholders

Plaintiff's argument that this Court should ignore the business judgment rule because this case involves a mutual fund, Appellant's Br. at 36-37, is utterly meritless.

The cases plaintiff cites, Jones v. Harris Assocs. L.P., 559 U.S. 335 (2010), and Daily Income Fund, Inc. v. Fox, 464 U.S. 523 (1984), involved the "perhaps unique" and "unusual cause of action created by § 36(b)" of the ICA, 15 U.S.C. § 80a-35(b).  Daily Income Fund, 464 U.S. at 535 & n.11.

---

[9]     Plaintiff incorrectly describes Abbey as a Delaware Supreme Court case. Appellant's Br. at 42.  It is actually a Chancery Court decision.

Plaintiff's invocation of cases construing § 36(b) is inexplicable.  Plaintiff has not alleged a § 36(b) claim, and the statute has no bearing whatsoever on this case.  Moreover, <u>Daily Income Fund</u> itself holds that what makes the § 36(b) cause of action exceptional is that it is ***not*** a corporate claim subject to state law demand requirements and Fed. R. Civ. P. 23.1 at all.  Thus, unlike ordinary derivative claims, a § 36(b) claim may be brought by a shareholder without making demand on the board.  <u>See</u> <u>Daily Income Fund</u>, 464 U.S. at 535, 542 ("[T]he unusual cause of action created by § 36(b) differs significantly from those traditionally asserted in shareholder derivative suits . . . [in that] Rule 23.1 does not apply . . . [and] the plaintiff in such a case need not first make a demand.").

By contrast, as the Supreme Court and this Court have repeatedly held, mutual fund shareholder derivative claims such as those in this case unquestionably are subject to state law demand requirements, including the rule that refusal of demand is reviewed according to the business judgment rule.  <u>See, e.g.</u>, <u>Burks v. Lasker</u>, 441 U.S. 471, 486 (1979) (holding that investment company independent directors are entitled to terminate a non-frivolous federal derivative cause of action in accordance with state law); <u>Daily Income Fund</u>, 464 U.S. at 541; <u>Kamen v. Kemper Fin. Servs. Inc.</u>, 500 U.S. 90 (1991) (reiterating that courts

27

ordinarily must apply state law demand requirements to federal derivative causes of action on behalf of investment companies).[10]

Thus, "[j]udicial review of a corporate decision to bring, not to bring, or to terminate a lawsuit is . . . governed by the business judgment rule, as determined by the law of the state of incorporation." RCM Sec. Fund, 928 F.2d at 1326. Absent some direct conflict between state law and the pertinent federal statute, which plaintiff does not allege, "[t]he law of that state applies even where federal claims are involved." Id.

In light of these principles, the district court therefore also properly rejected plaintiff's related argument that the business judgment rule is inapplicable because plaintiff tried to assert RICO claims. See SPA-7-9. See also In re Sunrise Sec. Litig., 916 F.2d 874, 889 (3d Cir. 1990); Rand v. Anaconda-Ericsson, 794 F.2d 843, 849 (2d Cir. 1986). Plaintiff has not renewed this meritless argument in his opening brief, and it is therefore waived. See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments

---

[10]     Indeed, as Burks recognized, the fact that Section 36(b) is the *only* provision for which Congress chose to eliminate the demand requirement underscores that the board retains control of other lawsuits asserting claims on behalf of the investment company. Burks, 441 U.S. at 484 ("[W]hen Congress did intend to prevent the board action from cutting off derivative suits, it said so expressly."); see also Kamen, 500 U.S. at 108.

not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief.").

*     *     *

Accordingly, as the district court correctly concluded, the relevant inquiry is whether plaintiff has overcome the presumptions of the business judgment rule with particularized allegations meeting the requirements of Fed. R. Civ. P. 23.1. SPA-23.  As the district court determined, he clearly has not.  SPA-24.

## II.  THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S ALLEGATIONS REGARDING THE BOARD'S SUPPOSED CONFLICTS ARE IRRELEVANT

Plaintiff expends considerable ink arguing that, due to supposed conflicts of interest, the board was incapable of deciding the demand in the first place. Appellant's Br. at 22-23, 40-47; A-366-70, ¶¶ 127-28, 131, 137-39, 145-46, 148.

As the district court correctly concluded, SPA-22, these allegations are legally irrelevant because the fact that plaintiff made demand precludes him from alleging that the board was too conflicted to consider it.  In any event, as demonstrated below in Section V, these allegations would be meritless even if plaintiff could argue this point.

The Delaware Supreme Court has repeatedly held that a "stockholder making [a] demand concedes the independence and disinterestedness of a majority of the board to respond."  Rales v. Blasband, 634 A.2d 927, 935 n.12 (Del. 1993).

29

A shareholder who makes demand therefore is barred from later challenging the independence of the board *ex ante* (<u>i.e.</u>, based on conditions existing at the time demand is made). <u>See, e.g.</u>, <u>Spiegel</u>, 571 A.2d at 775; <u>Stotland v. GAF Corp.</u>, 469 A.2d 421, 422 (Del. 1983); <u>Scattered Corp. v. Chi. Stock Exch.</u>, 701 A.2d 70, 75 (Del. 1997) ("[T]he Court looks only to good faith and the reasonableness of the investigation."), <u>overruled on other grounds by</u> <u>Brehm</u>, 746 A.2d at 253.[11]

Thus, in a demand refused case, "the only issues to be examined are the good faith and reasonableness of [the board's] investigation." <u>Levine</u>, 591 A.2d at 212. And a plaintiff can overcome the business judgment rule only with particularized factual allegations about how the board conducted its review of plaintiff's demand. <u>See</u> <u>Grimes</u>, 673 A.2d at 1219 (the only relevant independence inquiry is whether the board "*acted* independently" in evaluating the demand); <u>Mt. Moriah Cemetery</u>, 1991 WL 50149, at *3. <u>Accord</u> <u>Copeland</u>, 2012 WL 4845636, at *5-6 ("[A] plaintiff may show that demand was wrongfully refused by pointing

---

[11]    <u>See also</u> <u>Kamen</u>, 500 U.S. at 105 ("[R]eceipt of [a] demand makes it crystal clear to the directors of a Delaware corporation that the decision whether to commit the corporation to litigation lies solely in their discretion."); <u>Lambrecht v. O'Neal</u>, 504 F. App'x 23, 27 (2d Cir. 2012) (summary order) (following <u>Rales</u>); <u>FLI Deep Marine LLC v. McKim</u>, Civ. A. No. 4138-VCN, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009) (shareholders who made demand "conclusively conceded the independence of the Board, and are precluded from [] arguing that demand should be excused because the directors are conflicted.").

to events occurring ***after*** the demand which demonstrate a lack of independence, ***but not events occurring before the demand.***" (emphasis added)).[12]

There is no question that most of plaintiff's allegations – including those regarding the general structure of mutual fund families, the board's alleged exposure to liability, and the supposed conflicts the board has with the other funds it oversees, A-368-70, ¶¶ 137-39, 145-48 – arise from events predating the demand. In fact, they were also contained in virtually the identical form in the complaint plaintiff filed prior to making demand.[13]

Therefore, and notwithstanding plaintiff's attempts to distort or ignore the relevant authorities, see, e.g., Appellant's Br. at 29-32, because "[t]he only relevant question is whether the directors acted in an informed manner and with due care, in a good faith belief that their action was in the best interest of the corporation,"

---

[12]    Plaintiff argues that, even if this is the law (which it clearly is), it should not apply here because he "reserve[d] the right to question" independence. Appellant's Br. at 16. But that purported "reservation" was a nullity – plaintiff cannot "reserve" the right to not have the law apply to him. See Donovan v. Penn Shipping Co., Inc., 536 F.2d 536, 538 (2d Cir. 1976). Plaintiff also argues that he can still challenge the independence of the SDC. Appellant's Br. at 33 n.9. This is clearly incorrect, as the SDC was comprised of independent members of the board, A-453, and in any event the board retained final decision making authority. A-457. See Spiegel, 571 A.2d at 778-79 ("[T]he same standard of judicial review is applicable when a board delegates authority to respond to a demand to a [committee, the issues being] solely the good faith and reasonableness of the committee's investigation.").

[13]    See A-117-23, ¶¶ 93-121.

31

Levine, 591 A.2d at 198, plaintiff's assertions regarding the board's supposed *ex ante* lack of independence are irrelevant as a matter of law.[14]

## III.    THE DISTRICT COURT CORRECTLY REJECTED PLAINTIFF'S ALLEGATIONS REGARDING THE BOARD'S PROCESS IN REVIEWING PLAINTIFF'S DEMAND

The district court correctly rejected plaintiff's meager allegations regarding the board's process, concluding that "[p]laintiff's allegations do not implicate the reasonableness of the board's investigation[,] fail to demonstrate that the board's refusal was made in bad faith . . . [and do not] rise to the level of specificity required to overcome the strong deference owed to a board under the business judgment rule."  SPA-24.

As detailed above in the Statement of Facts, the demand review process overseen by the board was extremely thorough and included: the hiring of entirely

---

[14]    Plaintiff's citation to dictum from a now-reversed decision, Appellant's Br. at 30 (citing La. Mun. Police Emps.' Ret. Sys. v. Pyott, 46 A.3d 313 (Del. Ch. 2012), rev'd, 2013 WL 1364695 (Del. Apr. 4, 2013)), is unavailing.  That court commented that it "appear[ed] incorrect" that preclusion principles would "bar subsequent efforts to plead wrongful refusal."  46 A.3d at 333 n.12.  The Independent Trustee Defendants do *not* contend that Delaware law precludes pleading *wrongful refusal*; they contend that Delaware law prevents plaintiff from relying on allegations regarding supposed board conflicts that existed at the time plaintiff made demand.  The Pyott dictum does not appear to be inconsistent with this principle.  See id. ("A stockholder who makes demand concedes that the board is disinterested and independent with respect to the demand and therefore cannot argue that demand should have been excused as futile.").  Regardless, the Delaware Supreme Court's rulings are controlling and disprove plaintiff's arguments.  Further, the Delaware Supreme Court reversed the Chancery Court's holding as to preclusion.

separate and independent legal counsel, 15 substantive interviews, significant legal research, and review of a vast quantity of relevant documents and other information. A-453-58. And, at the conclusion of the board's review, plaintiff was provided a letter summarizing the board's deliberations and the basis for its decision. Id.

In an effort to challenge the board's careful process, plaintiff merely offers a handful of essentially irrelevant quibbles. As the district court correctly concluded, however, "plaintiff was not entitled to control the board or the committee's investigation." SPA-24. See also FLI Deep Marine, 2009 WL 1204363, at *4 ("To allow Plaintiffs the ability to dictate the manner in which the Board, or its special committee, investigates their allegations would be an unwarranted intrusion upon the authority [Delaware] law confers on a board of directors to manage the business and affairs of the corporation." (citation and internal quotation marks omitted)); Levine, 591 A.2d at 214. Although plaintiff apparently concedes that he is not entitled to dictate the way in which the board proceeds and contends that he has "never sought" to control the board's investigation, Appellant's Br. at 49, his arguments belie that claim.

## A. The Board's Decision to Delegate Certain Tasks Is Protected by the Business Judgment Rule

Plaintiff raises three objections to the board's entirely proper decision to delegate certain tasks to an SDC comprised of independent directors while

retaining ultimate authority over the response to plaintiff's demand.  Each is

contrary to clear and controlling precedent.

### 1.    It Was Proper for the Board to Retain Final Authority to Determine the Response to the Demand

Plaintiff argues that, although the SDC investigated the facts and made a

recommendation to the board, it was improper that the SDC did not have final

authority to determine the response to plaintiff's demand, which authority was

retained and ultimately exercised after due consideration by the full board.

Appellant's Br. at 38; A-366, ¶ 129.  This argument is specious and seems to be

based on plaintiff again confusing "demand required" cases with "demand

excused" cases.

In a case where demand is excused because a majority of the board is

interested or otherwise incapable of responding to the demand, the board may

appoint an independent special litigation committee with full power to respond to

the demand.  See Zapata Corp., 430 A.2d at 788.  In such cases – and such cases

only – a board must delegate complete authority to the special committee to secure

dismissal of a shareholder derivative action.  Otherwise, consideration of the

plaintiff's demand would be subject to the control of a board that was interested

and legally incapable of considering the demand.

But, a plaintiff who makes demand concedes as a matter of law that the

board is disinterested and capable of responding to the demand.  Thus, the board of

34

trustees unquestionably had plenary authority to respond to plaintiff's derivative lawsuit in the manner it deemed appropriate.  See Braddock v. Zimmerman, 906 A.2d 776, 785-86 (Del. 2006).  The board therefore was entitled to decide issues relating to the litigation itself or delegate all or some of its responsibility to an independent committee, and this decision is evaluated under the business judgment rule.  See, e.g., Seminaris, 662 A.2d at 1352-53; Copeland, 2012 WL 4845636, at *7 (procedure of establishing a committee to investigate the facts and to make a recommendation to the board regarding whether to commence litigation "is appropriate").[15]

### 2. It Was Proper for the SDC to Be Comprised of Independent Board Members

Citing no Delaware authority, plaintiff asserts that independent directors are "insiders" and that the SDC therefore should have been comprised of non-directors, without explaining how it might be proper for directors to delegate decisions about claims belonging to the Fund to non-directors.  See Appellant's Br.

---

[15]    See also In re Gen. Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1134 (D. Del. 1988) (no requirement to send demand to a special litigation committee); Spiegel, 571 A.2d at 776-77; Mt. Moriah Cemetery, 1991 WL 50149, at *2-3 (business judgment rule applied where special committee investigated demand and board ultimately adopted its recommendation).  Similarly, in Lambrecht, contrary to plaintiff's argument that the decision regarding the litigation was made by the committee and not the full board, Appellant's Br. at 32 n.8, both the committee *and* the board decided on the demand.  See In re Merrill Lynch & Co., Inc. Sec., Deriv. & ERISA Litig., 773 F. Supp. 2d 330, 348-49 (S.D.N.Y. 2011), aff'd sub nom., 504 F. App'x 23 (2d Cir. 2012) (summary order).

at 45 (citing Boland).  This suggestion is baseless, as investigations in demand

required cases are almost invariably overseen by board members. See, e.g., Halpert

Enters., 2008 WL 4585466 (board's audit committee conducted investigation);

Lambrecht, 504 F. App'x 23 (same).  Further, the SDC consisted entirely of

directors who were unquestionably independent, as they were not even on the

board at the time the Fund held the investments plaintiff challenges.  A-453-54.

### 3.   It Was Proper for the SDC to Delegate Certain Tasks to Independent Counsel

At the same time that he complains that the board did not delegate enough

authority, plaintiff also argues that the board should have been more involved.  See

Appellant's Br. at 49 (again relying on Boland).  Plaintiff suggests that the SDC

members should have participated in witness interviews rather than delegating that

responsibility to counsel and exercising oversight.  Id.; A-367, ¶ 135.  This

suggestion is mystifying, as it is commonplace and manifestly appropriate to

delegate such tasks to unquestionably independent and qualified counsel.[16]

---

[16]     See, e.g., In re Boston Scientific Corp. S'holders Litig., No. 02 Civ. 247, 2007 WL 1696995, at *4 (S.D.N.Y. June 13, 2007) (detailing law firm investigation); Halpert Enters., Inc. v. Harrison, No. 06 Civ. 2331, 2007 WL 486561, at *2-3 (S.D.N.Y. Feb. 14, 2007) (same), aff'd, 2008 WL 4585466; Scattered Corp., 701 A.2d at 71 (retention of independent counsel); Mt. Moriah Cemetery, 1991 WL 50149, at *2 (same).  See generally A-463-64 (Trust Instrument at Art. III § 1(i)) (Trustees may delegate authority).

36

Moreover, as noted in the Statement of Facts, the SDC members held seven meetings with the SDC's counsel at which they discussed the results of the legal research, document review, and witness interviews; the SDC chair was in frequent contact with counsel; and the SDC engaged in thorough consideration and discussion before making its recommendation (as did the board in considering the recommendation).  See A-455-57.  The board's significant involvement more than satisfies any "due process," Appellant's Br. at 49, that may be required under Delaware law.  See Copeland, 2012 WL 4845636, at *9 (rejecting similar criticisms "that the Independent Committee delegated fact-gathering and analysis to [counsel]").

### B.    The Board Was Not Obligated to Communicate with Plaintiff More Frequently, to Provide Plaintiff Discovery or to Allow Him to Control the Investigation

Again relying on Maryland law, plaintiff also alleges that the board and/or the SDC were not sufficiently "transparent" because they did not communicate with him frequently enough; did not provide him certain witness summaries, tolling agreements, or other documents; and he was not sufficiently involved in the SDC investigation.  See, e.g., Appellant's Br. at 34-35, 47-48.

To begin with, plaintiff has never addressed the repeated holding under Delaware law that "plaintiffs in a derivative suit are not entitled to discovery to

assist their compliance with the particularized pleading requirement of Rule 23.1 in a case of demand refusal." Scattered Corp., 701 A.2d at 77.[17]

The district court also recognized that the board "was not required to continuously inform plaintiff of developments in the investigation," SPA-11, and that a board need not meet with a shareholder plaintiff concerning a demand. Id.

Those holdings accurately applied Delaware law. Although a board must act on an informed basis in responding to a demand, "there is obviously no prescribed procedure" and it is "within the board's discretion" to determine "what matters will (and will not) be considered."[18]

Here, the board promptly notified plaintiff in writing that his demand had been received and asked for "any additional details, analysis, or documentation

---

[17]    See also Levine, 591 A.2d at 208-10; Stoner v. Walsh, 772 F. Supp. 790, 800 (S.D.N.Y. 1991); In re Boston Scientific, 2007 WL 1696995, at *5; In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig., No. 12 Civ. 4568, 2013 WL 1777766, *30 (S.D.N.Y. Apr. 25, 2013). In the face of these clear Delaware law holdings, plaintiff again resorts to citing Boland for the nonexistent "requirement" that a plaintiff receive annotated witness summaries. Appellant's Br. at 47.

[18]    Levine, 591 A.2d at 214 (holding that "a board of directors is not legally obligated to permit a demanding shareholder to make an oral presentation at a meeting"). See also Halpert Enters., 2008 WL 4585466, at *2 ("An investigating board generally is under no obligation to make use of any particular investigative technique" and a board's decision not to interview individual defendants did not indicate wrongful refusal); Boeing Co. v. Shrontz, No. 11273, 1994 WL 30542, *3-4 (Del. Ch. Jan. 19, 1994) (declining to provide plaintiff a copy of the committee's work product or other information plaintiff wanted was insufficient to overcome the protection of the business judgment rule).

38

regarding the subject matter of the Gamoran Action that would assist the Board in reviewing the Demand." A-220. Mr. Gamoran responded by simply referring the board to his prior pleadings and complaint, A-222-23. With respect to plaintiff's offer of unspecified further assistance, A-364, ¶ 119; A-220, "a determination of what matters will (and will not) be considered must necessarily fall within the board's discretion." <u>Levine</u>, 591 A.2d at 214. Moreover, notwithstanding plaintiff's allegation that he lacked the requisite information to contact the board regarding its investigation, <u>id.</u> at ¶ 120, counsel for the SDC wrote plaintiff on August 30, 2011 and informed him of the board's investigation. <u>See</u> A-225. Mr. Gamoran therefore had months to provide whatever additional information he wished.[19]

Perhaps most importantly, the board furnished plaintiff a Demand Refused Letter providing a thorough summary of the board's process and reasoning. A-453-58. The board's conscientious response far exceeded the requirements of Delaware law. <u>Compare</u> <u>Levine</u>, 591 A.2d at 214-15 & n.9 (affirming dismissal of "wrongful refusal" complaint in light of one paragraph demand refused letter); <u>Grimes</u>, 673 A.2d at 1212, 1219-20 (same disposition based on brief demand refused letter); <u>Scattered Corp.</u>, 701 A.2d at 71, 77 (similar).

---

[19]    In addition, plaintiff was promptly informed when he belatedly contacted the board after filing his third lawsuit that tolling agreements had been executed that would enable the board to complete its review of plaintiff's demand. A-227.

It thus appears that "the only way the [board] could have avoided [plaintiff's] criticism was if the Plaintiff himself was put in charge of the investigation." Halpert Enters., 2007 WL 486561, at *6.

### C.    Plaintiff's Arguments Regarding the Timetable of the Board's Investigation and Tolling Agreements Are Meritless

Plaintiff next contends that the board took too long to investigate because the statute of limitations was about to extinguish his proposed claims. He insinuates that the board delayed deliberately so that the Fund's claims would expire. See Appellant's Br. at 33-35, 49-51.

As the district court correctly held, however, the duration of the board's investigation was entirely reasonable and easily passes muster under the business judgment rule. See SPA-10-11. Further, as he has in other substantially similar cases, plaintiff's counsel himself created any potential statute of limitations problem by delaying for years before finally "cho[osing] a perilously late date to make a demand on the board." SPA-12. The district court also noted that, while not legally obligated to do so, the board's instruction that tolling agreements be prepared, executed, and extended "undercut" any "insinuation that the board delayed in order to extinguish plaintiff's claims," SPA-12, and further underscores the board's good faith.

Plaintiff offers no persuasive challenge (or in some instances any challenge) to these rulings.

40

### 1.    The Board's Chosen Timetable Was Well Within Its Business Judgment

As the district court recognized, a board is "entitled to a reasonable amount of time to investigate the demand." SPA-10 (citing authorities). This case involved "novel[] and complex[] . . . issues." SPA-11. And it was "reasonable [for the board] to defer a response to a demand to focus on pending litigation related to the demand," i.e., plaintiff's prior lawsuit in which he still insisted that demand was excused. SPA-11 (citing Piven v. Ryan, No. 05 CV 4619, 2006 WL 756043, at *3 (N.D. Ill. Mar. 23, 2006)).

Apart from his erroneous statute of limitations argument discussed below, plaintiff has offered no basis to challenge the board's business judgment or the district court's analysis regarding the length of time required to conduct an investigation. And, especially given that plaintiff himself claims this is a case of first impression, it is unsurprising and entirely appropriate that the board decided to devote significant time and effort to assessing plaintiff's demand. See, e.g., Boeing Co., 1994 WL 30542, at *4 (there "appears to be nothing unusual about the special committee's investigation" of more than twenty months).[20]

---

[20]    See also Mozes v. Welch, 638 F. Supp. 215, 221-22 (D. Conn. 1986) (filing suit eight months after demand did not give board sufficient time, given complexity of legal issues, ongoing internal investigation, and parallel criminal investigation); Drummond v. Tobin, No. 10CV1069, 2010 WL 5891674, at *4 (Mass. Super. Dec. 16, 2010) (Delaware law). Indeed, had the board acted more quickly on plaintiff's demand, and decided not to pursue the litigation, plaintiff

## 2.    Plaintiff's Delay Created Any Statute of Limitations Issue

As the district court properly concluded, a plaintiff cannot compel a board to rush its investigation by waiting until the statute of limitations is about to expire before making a demand.  SPA-12.  To the contrary, courts have made clear in other substantially similar cases (including those filed by plaintiff's counsel) that they will not dilute the demand requirement when a shareholder's dilatory conduct has created a statute of limitations issue.  See, e.g., Seidl v. Am Century Cos., 713 F. Supp. 2d 249, 259 n.14 (S.D.N.Y. 2010) ("Seidl I") (statute of limitations issues caused by Mr. Gamoran's counsel's tardiness in making demand did not excuse the demand requirement), aff'd, 427 F. App'x 35 (2d Cir. June 17, 2011); Caston v. Hoaglin, No. 2:08-cv-200, 2009 WL 3078214, at *4 (S.D. Ohio Sept. 23, 2009) ("Plaintiff cannot create his own irreparable harm" and thus bypass the demand requirement "by causing delay in the litigation."); Hartsel, 2011 WL 2421003, at *27 (stating in another case filed by Mr. Gamoran's counsel that plaintiff cannot file suit long after the relevant events and then seek to excuse demand based on the board's "inaction . . . after a corporation's claim accrues").

---

undoubtedly would have complained that the investigation was insufficient.  See Allison v. Gen. Motors Corp., 604 F. Supp. 1106, 1118 (D. Del. 1985) ("Indeed, if the directors made a hasty judgment without making careful inquiry into the demand, their judgment could be attacked as not satisfying the business judgment rule."); Strougo v. Bassini, 112 F. Supp. 2d 355, 365 (S.D.N.Y. 2000).

It is indisputable that plaintiff created any statute of limitations issue in this case.  Rather than pursuing two lawsuits with baseless demand futility allegations, plaintiff should have simply made demand in December 2008 instead of filing Gamoran I.  It is particularly unreasonable for plaintiff to insist that the board was required to conduct a hasty investigation immediately upon receipt of his demand letter at the same time plaintiff was still pursuing a lawsuit before Judge Sand alleging demand futility.  See SPA-11.

Plaintiff's opening brief simply fails to address the district court's patently correct ruling that plaintiff's responsibility for any statute of limitations issues precludes him from challenging the speed of the board's investigation on this basis. Plaintiff has therefore waived the point, and the district court's rejection of plaintiff's statute of limitations argument should be affirmed on this ground alone. See JP Morgan Chase Bank, 412 F.3d at 428; see also Ajayi v. Aramark Bus. Servs., 336 F.3d 520, 529 (7th Cir. 2003) ("[F]ailure to address one of the [district court's] holdings results in a waiver of any claim of error with respect to the court's decision on that issue." (citation omitted)).

### 3.    Plaintiff's Arguments Based on the Tolling Agreements Are Meritless

As explained above, to ensure that it could investigate in a deliberate and orderly fashion notwithstanding the tardiness of plaintiff's demand, the board took

43

the unusual, conscientious step of instructing that tolling agreements be prepared, executed, and extended.  See A-215; A-454-55.

Plaintiff makes a handful of meritless and essentially irrelevant arguments regarding the tolling agreements.

Plaintiff faults the district court for its "assumption" that tolling agreements were executed.  Appellant's Br. at 34 n.10.  However, the existence of the agreements was detailed in the Demand Refused Letter, A-454-55, which was before the district court, SPA-5, and courts "must presume [statements in a demand refused letter] to be true absent a particularized allegation rebutting [the] statement."  Scattered, 701 A.2d at 76 n.24.  As the district court correctly recognized, SPA-12 n.5, there is no such particularized allegation in plaintiff's complaints.[21]  Indeed, plaintiff admitted in his district court briefing that he "does not have any evidence to dispute *the existence*" of the tolling agreements.  Pl.'s Opp. Defs.' Mots. Dismiss at 47, ECF No. 60, Oct. 9, 2012 (emphasis in original).[22]

---

[21]    Both of plaintiff's complaints in this action referred to (and mischaracterized) defendants' statements regarding the tolling agreements and questioned the scope of the tolling agreements but did not "dispute their existence."  SPA-12 n.5.  See A-54, ¶¶ 121-22 (mischaracterizing defendants' representations and asserting that defendants had never confirmed that tolling agreements had been executed); A-364-65 ¶¶ 122-23 (similar).

[22]    Similarly, plaintiff contended before the district court that "because Defendants claim to have entered into tolling agreements, on this record, the court

44

Plaintiff's objection that he was not provided copies of the tolling agreements, see, e.g., Appellant's Br. at 34-35, is merely an effort to circumvent the well-established rule (discussed above) that "plaintiffs in a derivative suit are not entitled to discovery to assist their compliance with the particularized pleading requirement of Rule 23.1 in a case of demand refusal." Scattered Corp., 701 A.2d at 77. See Boeing Co., 1994 WL 30542, at *4 (rejecting similar argument that "failure to provide a form of limited discovery evidences wrongful refusal of demand"). Moreover, plaintiff has not suggested how furnishing him the agreements would have facilitated the board's investigation.

Plaintiff insinuates that defendants "promised" Judge Sand that they would execute a tolling agreement in a particular form acceptable to plaintiff. See, e.g., Appellant's Br. at 19, 50 (asserting that there is "no evidence" of what plaintiff deems "effective" or "appropriate" tolling agreements). That is incorrect. The Independent Trustee Defendants stated in Gamoran II that "even before plaintiff sent his demand letter, the Trust's board initiated steps to preserve its ability to conduct an appropriate investigation in due course. Defendants named in the Complaint have been asked to execute an appropriate tolling agreement. Almost all have agreed to do so, but the documentation has not been finalized."

---

must assume that the Fund's claims were preserved while the Board was investigating Plaintiff's demand." Id. at 49.

45

Independent Trustees' Reply Mem. Law Supp. Mot. Dismiss at 3, Gamoran II,

ECF No. 39, Apr. 7, 2011.  As noted above, such agreements were finalized and

later extended, and plaintiff's "questions as to their scope," SPA-12 n.5, do not

begin to suggest that demand was wrongfully refused.  Id.[23]

Plaintiff also suggests in his statement of facts that the Neuberger

Defendants' motions to dismiss on statute of limitations grounds show that the

tolling agreements were inadequate.  See Appellant's Br. at 20.  Because plaintiff

does not develop this point in the argument section of his brief, it is waived.  See,

e.g., AMSC Subsidiary Corp. v. FCC, 216 F.3d 1154, 1162 n.** (D.C. Cir. 2000).

In any event, plaintiff's argument is based on apparent misunderstandings

regarding the arguments the Neuberger Defendants raised, which in no way

suggested the insufficiency of or even discussed the substance of the tolling

agreements.[24]

---

[23]    Contrary to plaintiff's suggestion that the dismissal of his last lawsuit was
predicated on the tolling agreements, Judge Sand made clear that plaintiff's mid-
suit demand compelled him to dismiss Gamoran II irrespective of whether any
tolling agreement would be finalized.  See A-132; A-144-45 ("[T]he law is so clear
that the consequence of a demand made subsequent to the filing of a complaint
which seeks to excuse a demand on futility grounds is to dismiss the complaint.");
A-147 ("I'm not granting any stays, I'm just advising you that I won't [enter an
order dismissing the action] until May 2.").  That ruling was plainly correct, and
plaintiff did not appeal from the dismissal of Gamoran II.

[24]    The Neuberger Defendants' first motion to dismiss in this action did not
specifically address the Trust's claims but argued that plaintiff's individual (class)
claims in the Gamoran III Complaint were time barred.  See Mem. Supp.

46

In short, plaintiff has pleaded no particularized facts supporting his conclusory claim that the board intentionally tried to cause forfeiture of the Fund's claims, Appellant's Br. at 51, and the board's conscientious decisions regarding the timing of the investigation are clearly protected by the business judgment rule. See, e.g., FLI Deep Marine, 2009 WL 1204363, at *4 (shareholders may not second guess board's process); Levine, 591 A.2d at 207 (a court may not "substitute its judgment for that of [the] board").

###### D.   The Board's Acknowledgement That Pertinent Judicial Authority Would Inform Its Review of Plaintiff's Demand Did Not Waive the Demand Requirement

Plaintiff also cursorily renews his puzzling argument that the Independent Trustee Defendants somehow abdicated their right to seek dismissal of the Gamoran III Complaint by noting in their initial motion to dismiss that district court guidance on the viability of plaintiff's legal claims would have informed the board's response to plaintiff's demand.  Appellant's Br. at 51-52.

---

Investment Advisor Defs.' Mot. Dismiss Compl. at 22-23, ECF No. 34, Dec. 9, 2011.  The Neuberger Defendants' second motion to dismiss argued that the Gamoran IV Complaint – which was filed on July 16, 2012, A-19; A-340-77, four months after the board completed its investigation and refused plaintiff's demand on March 16, 2012, A-453-58 – could not benefit from relation back and was time barred in light of In re Direxion Shares ETF Trust, No. 09-cv-8011 (KBF), 2012 WL 717967, at *6 (S.D.N.Y. Mar. 6, 2012).  Mem. Supp. Investment Advisor Defs.' Mot. Dismiss Am. Compl. at 30-31, ECF No. 54,  Aug. 24, 2012; Reply Mem. Supp. Investment Advisor Defs.' Mot. Dismiss Am. Compl. at 16-17, ECF No. 62, Nov. 5, 2012.  None of these arguments suggests that the agreements were insufficient to preserve Fund claims that might be brought by the board while the board investigated.

47

Plaintiff bases his argument on the following footnote that appears in the Independent Trustee Defendants' district court brief in support of their motion to dismiss the <u>Gamoran III</u> Complaint, which plaintiff prematurely filed while the board was still considering his demand:

> In their motion to dismiss, the Neuberger Defendants have argued that the Court should dismiss the Complaint because it fails to state a legally viable claim. The Trust and the Independent Trustee Defendants take no position at this time regarding the merits of plaintiff's substantive legal theories. Dismissal of the entire Complaint is required based on the grounds set forth herein, and the Court need not reach any additional issues. However, any pronouncements by the Court on the substance of the novel issues presented by the Neuberger Defendants' motion would of course inform the board's response to plaintiff's demand.

Independent Trustees' Mem. Law Supp. Mot. Dismiss at 3 n.2, ECF No. 32, Dec. 8, 2011. The balance of the brief is devoted to demonstrating why dismissal of plaintiff's <u>Gamoran III</u> complaint was required.

Plaintiff unsuccessfully advanced the same abdication argument in <u>Gamoran II</u>. <u>See</u> Pl.'s Mem. Law Opp. Defs.' Mots. Dismiss, <u>Gamoran II</u>, ECF No. 33 (Mar. 25, 2011); Order, <u>Gamoran II</u>, ECF No. 41 (May 11, 2011). Accordingly, the issue is *res judicata*. In addition, in light of the perfunctory manner in which it has been presented, the argument is waived. <u>See, e.g.</u>, <u>Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.</u>, 673 F.3d 84, 107-08 (2d Cir. 2012).

48

In any event, plaintiff's abdication argument is groundless, and indeed this Court has rejected a similar contention.  See Bellikoff v. PricewaterhouseCoopers, LLP, 300 F. App'x 41, 43 (2d Cir. 2008).

Plaintiff relies on Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726 (Del. 1988), and In re American International Group, Inc., 965 A.2d 763 (Del. Ch. 2009), aff'd, 11 A.3d 228 (2011).  See Appellant's Br. at 51-52.  But these cases do not support plaintiff's position.

In Kaplan, a case in which the company "neither object[ed] to nor support[ed]" the action, the court held that a corporation in a derivative action "cannot effectively stand neutral" regarding ***the shareholders' capacity to sue derivatively***," and instead "must affirmatively object to or support the continuation of the litigation" by the shareholder plaintiff.  540 A.2d at 729, 731 (emphasis added).  Finding under these "unique facts" that the company had "acquiesced" to the derivative action, the court held that "the policy underlying [Rule 23.1] of safeguarding the directors' power to manage the affairs of the corporation is not implicated."  Id. at 731.  Similarly, the special litigation committee in In re American International Group, Inc. made a deliberate decision to take a neutral position as to certain claims and thus allow the stockholder plaintiffs to go forward.  965 A.2d at 809.  The court there made clear that it was "***not*** the typical

49

situation" – exemplified here – "where a corporation is objecting to litigation brought in its name."  <u>Id.</u> at 808 (emphasis added).

This case is the polar opposite of <u>Kaplan</u> and <u>American International Group</u>.  The Independent Trustee Defendants "affirmatively object[ed] to . . . the continuation of the litigation," <u>Kaplan</u>, 540 A.2d at 731, by the most formal and unambiguous means available: a motion to dismiss unequivocally objecting to plaintiff's efforts to exercise control of the litigation in the Trust's name.  <u>See</u> <u>Bellikoff</u>, 300 F. App'x at 43 ("[T]he corporation whom we must endeavor to protect . . . opposed the Shareholders' litigation.  This Court must respect the [company] Board's position.").

Far from surrendering any authority, the Independent Trustee Defendants' statement to the district court simply reflected the effort of the Trust's board to conscientiously fulfill its duties.

## IV.    PLAINTIFF HAS WAIVED HIS ATTACKS ON THE SUBSTANCE OF THE BOARD'S DECISION

As set forth in the Statement of Facts, aided by independent and highly qualified counsel, the board carefully weighed the facts gathered in the SDC investigation, business considerations, and applicable law.  A-453.

Nonetheless, in the district court, plaintiff also challenged the substance of the board's conclusion.  As the Independent Trustee Defendants demonstrated,

50

plaintiff's attacks on the substance of the board's decisions consisted of little more than legally irrelevant distortions of the board's Demand Refused Letter.[25]

Accordingly, the district court correctly rejected plaintiff's challenges. It recognized that "the final substantive judgment whether a particular lawsuit should be maintained requires a consideration of many factors [including] ethical, commercial, promotional . . . fiscal, as well as legal." SPA-23-24 (citation and internal quotation marks omitted). The district court also held that "Delaware law does not permit a plaintiff to overcome the business judgment rule simply by asserting that the substance of a board of director's decision was wrong." SPA-11 (quoting In re Merrill Lynch, 773 F. Supp. 2d at 348; citing Kamen, 500 U.S. at 105).

On appeal, plaintiff only briefly references his attacks on the substance of the board's decision in his Statement of Facts, Appellant's Br. at 22, with no discussion of the point at all in his Argument. Plaintiff therefore has waived the issue. See, e.g., State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 172 (2d Cir. 2004) ("When a party fails adequately to present arguments in an appellant's brief, we consider those arguments abandoned."); Niagara Mohawk Power Corp., 673 F.3d at 107-08.

---

[25]    See Independent Trustees' Mem. Law Supp. Mot. Dismiss at 15-17, ECF No. 58, Aug. 24, 2012; Independent Trustees' Reply Mem. Law Supp. Mot. Dismiss at 11-12, ECF No. 64, Nov. 5, 2012.

## V.    PLAINTIFF'S COMPLAINT FAILED TO ALLEGE PARTICULARIZED FACTS SHOWING THAT THE BOARD LACKED *EX ANTE* INDEPENDENCE

Even if (contrary to law) plaintiff could raise purported *ex ante* conflict issues as a basis to challenge the board's refusal of his demand, plaintiff's complaints in this case plainly fail to allege particularized facts showing that the board lacked independence.  Indeed, plaintiff's allegations on this issue are substantially identical to those that have been repeatedly rejected in other similar cases filed by plaintiff's counsel, including a decision affirmed by the Delaware Supreme Court.  See Hartsel, 2011 WL 2421003, at *20; Wodka v. Causeway Capital Mgmt. LLC, No. BC463623, slip op. at 27 (Cal. Super. Ct. Jun. 14, 2013) (Delaware law) (following Hartsel); Seidl I, 713 F. Supp. 2d at 259 n.14 (Maryland law, but including analysis under Delaware law).

### A.    Plaintiff Did Not Allege Particularized Facts Showing That the Independent Trustees and SDC Members Were Interested

A director is presumed independent unless the complaint alleges particularized facts showing that the director is unable to base his or her decision on the corporate merits of the issue before the board.  Aronson, 473 A.2d at 816. Indeed, with specific reference to an entity such as the Fund, Delaware law provides that an "[i]ndependent trustee" who is not an "interested person," as defined in the ICA, is deemed by statute "to be independent and disinterested *for all purposes*."  Del. Code Ann. tit. 12, § 3801(d) (emphasis added).

52

Pursuant to Trust policy, a super-majority of over 75 percent of the Trust's board is comprised of independent trustees as defined by the ICA.[26]  Plaintiff obliquely acknowledges that the Independent Trustee Defendants have no affiliation with the adviser or sub-adviser.  See A-344-45, ¶¶ 16-22.  There is no question, and plaintiff has not even tried to raise one, that the Independent Trustee Defendants are not "interested persons" within the meaning of the ICA, and thus are "independent" as a matter of law for all purposes, including evaluating plaintiff's demand.[27]

Even were that not enough, plaintiff's allegations do not suffice to create a reasonable doubt as to the board's independence.  First, the Gamoran IV Complaint asserts that the Independent Trustee Defendants and SDC members were appointed by the adviser, A-366, ¶ 131, and serve on multiple fund boards, id. at ¶¶ 131, 142, 144.  That is wrong.  Although the adviser may have appointed the initial board of trustees, a committee of the independent trustees was responsible for subsequent nominations to the board, and all subsequent nominees were elected

---

[26]    See A-489-97 (Trust's 2007 SAI); A-502-10 (Trust's 2008 SAI).

[27]    See Boyce v. AIM Mgmt. Grp., Inc., No. H-04-2587, 2006 WL 4671324 at *4-*6 (S.D. Tex. Sept. 29, 2006) ("The answer to . . . whether there is reasonable doubt as to [a trustee's] independence and disinterest" is supplied by § 3801.); Hartsel, 2011 WL 2421003, at *21.

by shareholders.  See 17 C.F.R. § 270.12b-1(c); A-498-99; A-512.[28]  Even if

plaintiff's allegations had factual merit, they merely restate in pejorative fashion

approved reasonable industry practices.  See, e.g., Jones, 559 U.S. at 338 (it is

"typical" for "[t]he adviser [to] select[] the fund's directors"); Krantz v. Prudential

Inv. Fund Mgmt. LLC, 305 F.3d 140, 143-44 (3d Cir. 2002) (multi-board

membership within mutual fund complexes "is the prevailing practice in the

industry").  Many courts, including the Delaware Chancery Court in a case

involving essentially the same allegations and the same plaintiff's attorney, have

explained that these boilerplate allegations are insufficient to challenge the

disinterested status of the Independent Trustee Defendants.  See, e.g., Hartsel, 2011

WL 2421003, at *22 (rejecting arguments that service on multiple boards or

appointment to board by adviser created independence issue).[29]  Plaintiff's further

suggestion that the board is incapable of considering demand because most of its

members have been named as defendants, A-366, ¶ 128, is groundless.  See

Aronson, 473 A.2d at 818.

---

[28]    Further, the Trust is governed by a single board that oversees all of the series
of funds thereunder; the advisor does not "reward" particular directors with service
on the boards for multiple funds.  See A-344 ¶ 5; A-369, ¶ 142; A-489-95; A-502-
09.

[29]    See also Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 345
(2d Cir. 2006) (rejecting argument that service on multiple fund boards or receipt
of substantial compensation for board service causes a director to be "interested");
Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 329-31 (4th Cir. 2001)
(same).

Plaintiff similarly argues that conflicts arise because the trustees also serve on the boards of other funds within the Trust, and a successful lawsuit could result in the adviser no longer being able to cover expenses relating to such funds.  A-368-70, ¶¶ 137, 139, 146-48.  At least three cases have rejected the same allegation made by the same plaintiff's counsel.  See Hartsel, 2011 WL 2421003, at *22 (Delaware law); Seidl I, 713 F. Supp. 2d at 261 (Maryland law); Wodka, slip op. at 27 (Delaware law) (following Seidl I and Hartsel) ("The structure alleged by Plaintiff is common in the mutual fund industry and the fact that some of those funds may have adverse interests to other funds does not, by itself, overcome the strong presumption that natural persons are independent trustees.").  As Seidl I recognized, plaintiff's theory "would essentially nullify the demand requirement in situations where the corporation is an investment firm with multiple related funds." 713 F. Supp. 2d at 261-62.  In any event, plaintiff fails to particularize why other funds would be harmed.  See id.[30]

Plaintiff also alleges that the directors may be subject to unspecified "personal or social relationships" or "informal business influences and incentives" that could "*potentially* affect[]" the directors' relationships with one another. Appellant's Br. at 44-45 (emphasis added) (citing Boland, 31 A.3d at 558, 564).

---

[30]    See also Hartsel, 2011 WL 2421003, at *22 ("I hold that trustees who serve on multiple boards within the same mutual fund complex are not *per se* interested persons under the ICA, even though pursuing one fund's interests within the complex might adversely affect the complex's other funds." (footnote omitted)).

The Delaware Supreme Court has unequivocally rejected such allegations and made clear that the reasoning of the decision on which plaintiff relies (In re Oracle Corp., 824 A.2d 917) applies *only* in demand *excused* cases.  See Beam, 845 A.2d at 1050-52 (allegations that "presuppose[] that the professional and social relationships that naturally develop among members of a board impede independent decisionmaking" are "not enough to negate independence"); see also id. at 1054-55 (Oracle reflects that a more intensive review may be warranted "in a setting where presuit demand is already excused").

### B.  Plaintiff Has Not Alleged Particularized Facts Showing a Substantial Likelihood of Liability

As the Delaware Supreme Court confirmed by affirming Hartsel, plaintiff's allegations as to potential civil and criminal liability the trustees face, A-368-69, ¶¶ 137-38, are insufficient to create an independence issue.  See Hartsel, 2011 WL 2421003, at *24-26; accord Seidl I, 713 F. Supp. 2d at 260-61 (rejecting similar allegations by plaintiff's counsel as insufficient to show a substantial likelihood of liability) (Delaware and Maryland law); Wodka, slip op. at 14-15 (relying on Hartsel and concluding in another similar case filed by plaintiff's counsel that there was no substantial likelihood of director liability under 18 U.S.C. § 1955, as plaintiff could not identify a single enforcement action seeking to hold a passive investor liable for purchasing stock in a gambling company).

## VI.  THE CLAIMS AGAINST THE INDEPENDENT TRUSTEE DEFENDANTS ALSO FAIL TO STATE A CLAIM

Although this Court need not reach the issue, an alternative ground for affirming the judgment is that plaintiff's claims also fail to state a cognizable claim as a matter of law and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff does not allege, nor could he, that the Independent Trustee Defendants made the investments at issue.  Mutual fund directors typically do not make or review particular fund investments.  See Jones, 559 U.S. at 338 (typically, "[t]he adviser . . . manages the fund's investments, and provides other services"); see also Stone v. Ritter, 911 A.2d 362, 372 (Del. 2006) (most corporate decisions "are, of course, not the subject of director attention" (citation and internal quotation marks omitted)).  The Gamoran IV Complaint and the Fund's investment advisory contract confirm that the Independent Trustee Defendants had no such responsibility here.[31]

---

[31]    See A-370, ¶ 147 (alleging that the adviser and sub-adviser "are responsible for providing or arranging for all services necessary for the operation" of the Fund); A-463 at Art. III, § 1(i) (board of trustees has authority "[t]o delegate such authority as they consider desirable to any officers of the Trust and to any agent, independent contractor, manager, investment adviser, custodian or underwriter"); A-514 at ¶ 1.1 (Management Agreement as of November 3, 2003) (specifying adviser's duties to select the Fund's investments in accordance with specified standards); see also Del. Code Ann. tit. 12, § 3806(i) (recognizing propriety of delegation by trustees).  The Demand Refused Letter similarly explained that the board "monitored the overall performance of the fund" and "regularly discussed investment performance," but the materials the board reviewed only identified 888

57

Moreover, plaintiff did not properly state a claim based on an alleged failure of oversight, which "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Desimone v. Barrows, 924 A.2d 908, 939 (Del. Ch. 2007) (quoting In re Caremark Int'l, Inc. Deriv. Litig., 698 A.2d 959, 967 (Del. Ch. 1996)). "[T]o establish oversight liability a plaintiff must show that the directors *knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities such as by failing to act in the face of a known duty to act. . . . [A] showing of bad faith is a *necessary condition* to director oversight liability." In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 123 (Del. Ch. 2009). The Amended Complaint offers no non-conclusory allegation that meets this standard.[32] And "Delaware courts

---

and NETeller as bottom performers for the Fund *after* the investments had been totally liquidated. A-456.

[32]   The bald allegation that the "Trustees participated in the conspiracy by deliberately failing to carry out their fiduciary and other legal responsibilities to halt the illegality at a time when doing so would have prevented the [Fund's] injury," A-349-50, ¶ 47, does not satisfy the requirement in Iqbal v. Ashcroft, 556 U.S. 662 (2009), that a plaintiff plead sufficient *facts* to plausibly support such a claim – particularly one that turns on an individual's knowledge or state of mind. Id. at 680-81. Moreover, the paragraph purports to be based on information and belief, but plaintiff fails to set out the basis for his belief as required by heightened pleading standards such as Fed. R. Civ. P. 23.1. See, e.g., Brickman v. Tyco Toys, Inc., 722 F. Supp. 1054, 1060 (S.D.N.Y. 1989). Notably, the Demand Refused Letter informed plaintiff that the Trustees were not aware of the challenged investments at the time they were made or at the time they were liquidated but that the board "had in place adequate processes to monitor investment performance." A-456.

routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." Desimone, 924 A.2d at 940.

Further, given the novelty of plaintiff's legal theory, the Independent Trustee Defendants could not be liable even assuming counterfactually that they had approved the particular investments at issue. "[B]oard approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." Wood v. Baum, 953 A.2d 136, 142 (Del. 2008). Accordingly, although a shareholder derivative complaint "allege[d] many violations of federal securities and tax laws," it was properly dismissed because it did "not plead with particularity the conduct in which each defendant 'knowingly' engaged or that defendants knew that such conduct was illegal." Id.[33]

Applying these principles, Hartsel concluded that the same plaintiff's attorney presenting a complaint alleging the same supposed wrongdoing did not plead sufficient facts to permit an inference that the trustees faced a substantial

---

[33]    See also Gagliardi v. Trifoods Int'l, Inc., 683 A.2d 1049, 1051 n.2 (Del. Ch. 1996) ("By 'bad faith' is meant a transaction that is . . . known to constitute a violation of applicable positive law."); Litt v. Wycoff, Civ. A. No. 19083-NC, 2003 WL 1794724 at *7 (Del. Ch. Mar. 28, 2003) (no demand excusal where plaintiff failed to identify any precedent interpreting federal statute to prohibit the alleged conduct or to enforcement actions or investigations based on similar conduct).

likelihood of liability given that plaintiff's interpretation of § 1955 is "anything but clear and unambiguous." <u>Hartsel</u>, 2011 WL 2421003, at *25. The <u>Hartsel</u> court was "not convinced that purchasing or owning securities in publicly traded gambling enterprises is illegal under § 1955." <u>Id.</u> at *26.

<u>Hartsel</u> further concluded that, in any event, "even if Trustees' conduct related to purchasing and owning securities in allegedly illegal gambling businesses did violate § 1955, the Complaint fails to allege sufficient facts for the Court to infer that they knew that such ownership was illegal." <u>Id.</u> (footnote omitted). As the court explained, the reports and prosecution on which plaintiff relies "did not involve owners of securities in illegal gambling enterprises. As such, they did not make clear that passive stock ownership also was illegal." <u>Id.</u> <u>Compare</u> A-355-60, ¶¶ 78-97, 101-05.[34]

For these reasons, and those reasons set forth in the Neuberger Defendants' brief, the complaints in this case fail to state claims against the Independent Trustee Defendants.

---

[34]     Plaintiff's arguments as to whether 888 and NETeller themselves broke the law or that the government prosecuted some companies and their executives, Appellant's Br. at 9-11, are therefore inapposite. They ignore that the key issue for Delaware law claims against the Independent Trustee Defendants is whether the board knew that it was not discharging its duties by allowing the Fund to own shares in the companies.

## VII.  THE JUDGMENT SHOULD BE MODIFIED OR CLARIFIED TO REFLECT THAT PLAINTIFF'S CLAIMS ARE DISMISSED WITH PREJUDICE

The Independent Trustee Defendants adopt the Neuberger Defendants' arguments that the action should be dismissed with prejudice.

Alternatively, at a minimum, it seems clear that the district court intended to – and should have – entered a dismissal of the action with prejudice to plaintiff's ability to allege wrongful refusal of demand.  The judgment should be modified to more clearly reflect that.

In dismissing the Amended Complaint, the district court cited Fed. R. Civ. P. 15(a) for the proposition that leave to amend a pleading should be freely given when justice so requires.  SPA-25.  But the district court did not grant leave to amend.  It instead concluded:

> Here, the court notes that lead counsel asserted essentially the same legal "illegality" theory in support of claims in previous actions filed in various regions of the country in both state and federal courts. However, it is not entirely clear whether or not this claim could someday prove to be valid.  The court therefore exercises its discretion and dismisses the complaint without prejudice.

SPA-26.  The district court order thus terminated the action.  See Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445, 448-50 (2d Cir. 1978) ("This circuit has clearly rejected the view that 'without prejudice' means 'with leave to amend.'").

Although the district court believed that a "without prejudice" dismissal of the Fund's underlying claims was appropriate because plaintiff's "'illegality'

theory . . . could someday prove to be valid," SPA-26, nothing suggests that the district court thought that plaintiff should be afforded another opportunity to plead wrongful refusal of demand or anything else.  To the contrary, as already noted, the district court in fact declined to allow plaintiff to plead for a third time in this case (and a fifth time overall against these defendants), and its opinion specifically noted plaintiff counsel's "dubious history" of filing similar complaints.  SPA-15 at n.1, SPA-26.  Moreover, plaintiff never even requested an opportunity to re-plead yet again before the district court.

The district court's rejection of plaintiff's wrongful refusal allegations has preclusive effect irrespective of the "without prejudice" label in the judgment.  If demand-related issues are "actually litigated and determined by [a] court," that determination is binding.  W. Coast Mgmt. & Capital, LLC v. Carrier Access Corp., 914 A.2d 636, 644-45 (Del. Ch. 2006) (collecting cases).  "The fact that the dismissal was 'without prejudice' simply means that the underlying claim – belonging to [the company] – was not adjudicated."  Id. at 644 (citation omitted).[35]

Nonetheless the "without prejudice" label can create unnecessary confusion in the context of the dismissal of a derivative action.  See Elfenbein, 590 F.2d at 449 n.3 (noting a "great deal of confusion surrounding the use of the term

---

[35]    See generally 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4437 (2d ed. 2002) ("Dismissal for failure to satisfy a procedural precondition . . . should preclude relitigation of the same precondition issue.").

'prejudice' in this context"); <u>In re Sonus Networks, Inc.</u>, 499 F.3d 47, 60 n.6 (1st Cir. 2007) (although Fed. R. Civ. P. 41 does not prescribe *res judicata* principles, lawyers often apply "Rule 41 and claim preclusion doctrine . . . interchangeably"); <u>see also</u> <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 505-06 (2001).

Thus, in <u>In re Kauffman</u>, the First Circuit affirmed the dismissal of a shareholder derivative lawsuit for failure to sufficiently allege demand futility. 479 F.2d 257. As here, the district court had characterized the dismissal as "without prejudice," but the First Circuit clarified the order as follows:

> This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action."

<u>Id.</u> at 267 (<u>quoting</u> Rest. of Judgments § 49, cmt. b, at 195 (1942)).

A similar modification or clarification of the district court's judgment is warranted in this case – the dismissal is with prejudice as to wrongful refusal of demand.

## VIII. THE DISTRICT COURT ERRED BY NOT RULING THAT PLAINTIFF AND HIS COUNSEL ARE INADEQUATE REPRESENTATIVES FOR PURPOSES OF PURSUING A PURPORTED DERIVATIVE LAWSUIT

Alternatively, the district court should be directed to enter an order that plaintiff and his counsel should not be permitted to pursue further related litigation in this action or otherwise because they do not fairly and adequately represent shareholders.[36]

Under Fed. R. Civ. P. 23.1, a derivative action cannot "be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." A plaintiff in a derivative action owes a corporation undivided loyalty, must not have ulterior motives, and may not pursue a personal agenda. See Smith v. Ayers, 977 F.2d 946, 949 (5th Cir. 1992).

As the district court found, "[p]laintiffs' counsel has a rather dubious history of filing similar complaints based on the same basic theory in both federal and state courts around the country." SPA-15 (citing many of the cases plaintiff's counsel has filed on this same theory).

In this case, plaintiff's repeated and inexplicable attempts to avoid the clear requirements of Delaware law over the course of many years have required the

---

[36] Although the Independent Trustee Defendants raised this point below, the district court did not address it. There is no need for a remand, however. See Reynolds v. Giuliani, 506 F.3d 183, 197 (2d Cir. 2007).

Fund to incur significant expense and show that plaintiff has no concern for the Fund's resources. Plaintiff filed three cases in three different courts before the board had an opportunity to investigate the demand; he made an inexplicably-timed mid-suit demand that effectively mooted his second action after the Fund had expended considerable effort to have it dismissed; and he prematurely filed his third case only weeks after his second case was dismissed. Later, after receiving the Demand Refused Letter, plaintiff resisted the sensible suggestion that he amend his complaint to reflect that event, and instead caused the district court to issue an order dismissing the case with leave to amend, leading to his *fourth* complaint. See SPA-9, 12 ("The court is compelled to note that the present motion might have been rendered unnecessary if plaintiff ha[d] accepted defendants' suggestion that he move to amend the complaint."). Then, plaintiff's Gamoran IV complaint asserted a new claim that was not previously put before the board, see SPA-25, conduct suggestive of "harassment." See Grimes, 673 A.2d at 1220.

The vast majority of the foregoing was utterly pointless and would have been avoided had plaintiff followed the clear requirements of Delaware law from the beginning. Cf. Pyott, 46 A.3d at 349-51 (shareholder whose precipitate filings forced corporation unnecessarily to bear the expense of briefing multiple motions to dismiss and required multiple courts to expend judicial resources was not representing the best interests of the corporation, and hence was an inadequate

65

derivative plaintiff), rev'd, 2013 WL 1364695 (reversing district court's decision to apply an irrebutable presumption of inadequacy to fast filers).

As this appeal illustrates, plaintiff also has compelled the Trust to respond repeatedly to baseless arguments predicated on Maryland law, patently insufficient wrongful refusal allegations, and legally irrelevant assertions regarding the board's *ex ante* independence that plaintiff continues to press even after making demand and after similar allegations have been rejected by the Delaware Supreme Court.

Enough is enough. Plaintiff's imposition of unnecessary costs on the Fund and its other shareholders by his inexplicable flouting of the clear requirements of Delaware law and unnecessary multiplication of the proceedings, shows an utter disregard for the interest of the other investors whom he would purport to represent. It is clear, therefore, that plaintiff has not and will not "fairly and adequately represent the interests of shareholders," as required by Fed. R. Civ. P. 23.1. See Ayers, 977 F.2d at 948-49.

## CONCLUSION

The district court's dismissal of plaintiff's complaints and its termination of this action should be affirmed.  The action should be dismissed with prejudice, or at least the district court's judgment should be clarified or modified so that there is no doubt that the dismissal of the action is with prejudice to plaintiff's ability to continue this litigation.  In addition, the district court should be directed to enter a finding that plaintiff does not fairly and adequately represent the interests of shareholders.

Dated: July 17, 2013                Respectfully submitted,

K&L GATES LLP

By:   s/  Nicholas G. Terris
Jeffrey B. Maletta
Nicholas G. Terris (Counsel of Record)
Theodore L. Kornobis
1601 K Street, NW
Washington, DC 20006-1600
E-mail:  jeffrey.maletta@klgates.com
              nicholas.terris@klgates.com
              ted.kornobis@klgates.com
Phone:  (202) 778-9000
Fax:      (202) 778-9100

*Attorneys for Appellees/Cross-Appellants John Cannon, Faith Colish, C. Anne Harvey, Robert A. Kavesh, Howard A. Mileaf, Edward I. O'Brien, William E. Rulon, Cornelius T. Ryan, Tom D. Seip, Candace L. Straight, Peter P. Trapp and Nominal Defendant Neuberger Berman Equity Funds*

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed. R. App. P.

28.1(e)(2)(B) because this Brief contains 16,053 words, excluding the parts of the

Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has

been prepared in a proportionally-spaced typeface using Microsoft Word Version

2003 in 14-point Times New Roman font.

Defendants certify that the PDF version of the Brief has been scanned for

viruses and no virus has been detected.

Dated:   July 17, 2013

s/ Nicholas G. Terris
Nicholas G. Terris
Attorney for Independent Trustee Defendants
and Nominal Defendant

**ADDENDUM**

**i**

**ADDENDUM**
**TABLE OF CONTENTS**

**Page**

<u>Wodka v. Causeway Capital Mgmt. LLC</u>,
   No. BC463623, slip op. (Cal. Super. Ct.
   Jun. 14, 2013) ........................................... ADD-1

18 U.S.C. § 1955........................................... ADD-32

15 U.S.C.A. § 80a-35(b) ............................... ADD-34

Del. Code Ann. tit. 12, § 3801(d) ................. ADD-36

Del. Code Ann. tit. 12, § 3806(i) .................. ADD-37

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | **DEPT**. 322 |
|---|---|---|---|
| HONORABLE  LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
| | STEVEN H WODKA | | |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

COURT'S RULING ON SUBMITTED MATTER

This Court heard oral argument on Defendants'
Demurrers to the Class Action Complaint on May 20,
2013, and requested further briefing of the parties
to be completed by June 5, 2013. This Court having
taken the demurrer under submission as of June 5,
2013, now issues the following order:

Final Ruling:  SUSTAINED WITH LEAVE TO AMEND IN PART
AND WITHOUT LEAVE TO AMEND IN PART

Having reviewed and considered the Memorandum of
Defendants (Other Than Nominal Defendant) in Support
of Dismissal Without Leave to Amend, filed June 3,
2013, and Plaintiff's Memorandum of Points and
Authorities in Opposition to Dismissal Without Leave
to Amend, filed June 5, 2013, along with all of the
prior pleadings filed in connection with Defendants'
Demurrers and the oral argument of counsel, the
Court rules as follows:

I.   Introduction

     As alleged in the Complaint and taken as true
for the purpose of demurrer, Plaintiff is a
shareholder in the nominal defendant Causeway
Capital Trust (the "Trust") through a mutual fund

Page   1 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-2

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON      JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE                      JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #6          M. CARRILLO, C.A.   Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel | |
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

controlled by the Trust called the Causeway
International Value Fund (the "Fund"). The Trust is
a statutory trust organized under the laws of
Delaware. (Comp., 15.) (Comp., 3.) The Fund
does not have a separate board of trustees and is
operated by the same trustees who control the Trust.
(Comp., 19.) Of the five portfolio funds under the
Trust, the Fund provides roughly 98% of the
investment management fees that the Trust collects
from all five funds. (Comp., 19.) For this
reason, the Complaint refers to the remaining four
funds, all of which are also operated and owned by
the Trust, as the "Opposing Funds." (Comp., 17,
19.)

Defendant Causeway Capital Management, LLC
("CCM") is an investment management company, which
controls the Trust and appoints the Trust's
executive management team as well as the entire
board of trustees. (Comp., 20.) Defendant Sarah
Ketterer is the CEO and co-founder of CCM, who also
acts as portfolio manager for the Fund and exercises
operational oversight of the Fund. (Comp., 21.)
Defendant Harry Hartford is the president and a
co-founder of CCM and acts as a portfolio manager
for the Fund. (Comp., 23.) Defendants James
Doyle, Jonathan Eng, and Kevin Durkin are portfolio
managers for the Fund as well as directors of CCM.
(Comp., 24-26.) Defendant Turner Swan is the
President and Secretary of the Trust and member of
CCM. (Comp., 27.) Defendant Gracie Fermelia is

Page    2 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #6 | | |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | STEVEN H WODKA | | |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

the Chief Compliance Officer for the Trust and is
Chief Operating Officer at CCM. (Comp., 28.)
Defendant Mark Cone is a managing partner of CCM and
a trustee of the Trust. (Comp., 29.) Defendants
John Gavin and Eric Sussman are trustees of the
Trust. (Comp., 30.) The Court refers to all
defendants collectively as "Defendants."
Additionally, the Court refers to CCM, Ketterer,
Hartford, Doyle, Eng, Durkin, Swan, Fermelia, and
Cone as the "CCM Defendants."

     According to the Complaint, Defendants engaged
in criminal activity by investing money on behalf of
the Trust in various illegal online gambling
businesses through the Fund. (Comp., 1.) Those
investments suffered significant losses beginning in
2006 when the federal government began cracking down
on internet gambling and arrested principals of
online gambling websites. (Comp., 1.) Despite
this crackdown, and with knowledge of the illegality
of the online gambling sites, the Fund continued to
invest in those online websites after the crackdown.
(Comp., 2.) These investments violated 18 U.S.C.
section 1955, which makes it a federal crime to "own
all or part of an illegal gambling business."
(Comp., 7.)

     In April 2006, Defendants caused the Fund to
purchase millions of shares in the company
PartyGaming, PLC ("PartyGaming") despite a 2005
prospectus noting that its activities were

Page    3 of  31    DEPT. 322

**MINUTES ENTERED
06/14/13
COUNTY CLERK**

ADD-4

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                                 DEPT. 322

HONORABLE LEE SMALLEY EDMON        JUDGE    N. NAVARRO        DEPUTY CLERK

HONORABLE                           JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#6
                M. CARRILLO, C.A.    Deputy Sheriff   NONE           Reporter

| 3:00 pm | BC463623 | | |
|---|---|---|---|
| | STEVEN H WODKA | Plaintiff Counsel | NO APPEARANCES |
| | VS | | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

considered illegal in the United States, but that
87% of the website's revenues were generated from
U.S.-based customers.  (Comp., 39-40.)  In
addition, prior to the Fund's investment in
PartyGaming in 2006, numerous news sources reported
the illegality of PartyGaming's activities in the
U.S.  (Comp., 42-43.)  The Fund (at the direction
of Defendants) invested in PartyGaming with
knowledge that PartyGaming was engaged in business
that was unlawful in the U.S.  (Comp., 44.)  In
doing so, Defendants took the foreseeable risk that
law enforcement action against PartyGaming in the
U.S. would significantly diminish the value of the
investments, a risk that was disclosed by
PartyGaming in its 2005 prospectus.  (Comp., 45.)

     After an initial investment of roughly $34M in
PartyGaming, PartyGaming's stock price fell
precipitously between the spring and fall of 2006,
but Defendants continued to invest further in the
company.  (Comp., 46-55.)  In October 2006,
Congress enacted the Unlawful Internet Gambling
Enforcement Act of 2006 ("UIGE"), and PartyGaming
shut down its operations in the United States.
(Comp., 56.)  The Fund ultimately sold its shares
in PartyGaming after the stock value had declined by
more than 80%.  (Comp., 57.)  In a September 2007
Annual Report, the Trust noted that investments in
PartyGaming had been a "significant detractor" to
the Fund's performance.  (Comp., 61.)  In 2008, one
of PartyGaming's co-founders pled guilty to federal

Page   4 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-5**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | DEPT. 322 | |
|---|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK | |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR | |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter | |

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

charges of illegal gambling and agreed to pay a
$300M fine to the U.S. government.  (Comp., 59.)

  Similarly, Defendants also caused the Fund to
invest in a second online gambling website NETeller
PLC ("NETeller") beginning in 2006.   The results of
the NETeller investment were similar to the
PartyGaming investment.  (Comp., 62 & 63.)
NETeller ultimately agreed to pay $136M in criminal
fines to avoid prosecution by the federal government
.  (Comp., 65.)  As a result of the Fund's
investments in PartyGaming and NETeller, the value
of Plaintiff's shares in the Trust (through the
Fund) declined by a pro rata amount.  (Comp., 4.)

  The Complaint alleges that Plaintiff has not
made a demand on the board of trustees for the Trust
because the entire board has an inherent conflict of
interest in light of its strong ties to Defendants,
because the entire board has abdicated
responsibility for and waived any right to determine
whether to proceed with litigation for these claims,
and because the majority of the board of trustees
are interested in this litigation by their exposure
to civil and criminal penalties.  (Comp., 89.)
Plaintiff alleges that the board of trustees is
inherently conflicted because any decision to
vindicate the rights of investors in the Fund
against CCM would be contrary to the interests of
investors in the Opposing Funds because the Opposing
Funds would be required to start paying their own

**MINUTES ENTERED**
06/14/13
COUNTY CLERK

ADD-6

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                                    **DEPT.** 322

HONORABLE LEE SMALLEY EDMON        JUDGE   N. NAVARRO         DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM                 ELECTRONIC RECORDING MONITOR
#6
            M. CARRILLO, C.A.    Deputy Sheriff   NONE              Reporter

3:00 pm  BC463623                            Plaintiff
                                             Counsel
         STEVEN H WODKA                                NO APPEARANCES
         VS                                  Defendant
         CAUSEWAY CAPITAL MANAGEMENT LLC     Counsel
         PLTF. 170.6 JOHNSON
         PLTF. 170.1 HIGHBERGER
         DEEMED COMPLEX (6-21-11)

**NATURE OF PROCEEDINGS:**

operational fees rather than relying on subsidies
from the Fund. (Comp., 89(a); 92-96.) Moreover,
the named defendants in this lawsuit include a
majority of the board of trustees. (Comp., 89(b).)
The Complaint also alleges that failure to bring a
pre-suit demand on the board of trustees is excused
because "the wrongdoing of which Plaintiff complains
constitutes inherently illegal criminal activity
that is ultra vires and a per se violation of the
business judgment rule." (Comp., 104.)

     The Complaint alleges derivative and class
action causes of action against all Defendants for:

1.   Breach of Fiduciary Duty (Derivative)
2.   Negligence (Derivative)
3.   Waste (Derivative)
4.   Breach of Fiduciary Duty (Individual & Class)
5.   Negligence (Individual & Class)

Defendants Gavin and Sussman jointly demur and also
join the CCM Defendants' demurrer. The CCM
Defendants jointly demur separately but also join
Gavin and Sussman's demurrer. The Nominal Trust
Defendant joins both demurrers.

II.  Judicial Notice

     Gavin & Sussman request judicial notice of two
documents, both of which were filed with the U.S.
Securities and Exchange Commission. The unopposed

                 Page  6 of  31   DEPT. 322

                                          MINUTES ENTERED
                                          06/14/13
                                          COUNTY CLERK

ADD-7

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                                DEPT. 322

HONORABLE LEE SMALLEY EDMON          JUDGE  N. NAVARRO          DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM                ELECTRONIC RECORDING MONITOR
#6
          M. CARRILLO, C.A.       Deputy Sheriff  NONE                    Reporter

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

request is GRANTED. (Evid. Code § 452(h); Smiley v.
Citibank (1995) 11 Cal.4th 138, 145 fn.2 [judicial
notice proper for documents publicly on file with
federal administrative agencies].)

The CCM Defendants also request judicial notice
of four items. The request is unopposed. Exhibits
A and B are documents filed by the Trust with the
SEC and judicial notice is GRANTED for the reasons
noted above. Exhibits C and D are documents
reflecting the value of the Dow Jones Industrial
Average and the S&P 500 Index in 2006. The CCM
defendants seek judicial notice of the fact that the
Dow Jones Industrial Average stock index increased
by 16% in 2006 and that the S&P 500 Index increased
by 14% in 2006. Those facts and the Yahoo! Finance
exhibits demonstrating them are not subject to
reasonable dispute and are readily verifiable by
reference to sources of indisputable accuracy.
(Evid. Code § 452(h).) Judicial notice of the CCM
Defendants' Exhibits C and D is GRANTED.

Plaintiff seeks judicial notice of two press
releases from the U.S. Department of Justice, a 2005
article published in the New York Times, and a the
prospectus from PartyGaming's initial public
offering. Requests A and B are official acts of the
U.S. Department of Justice and are the proper
subject of judicial notice. (Evid. Code § 452(c).)
Exhibit C is a news article, the existence of which
is not reasonably subject to dispute and the

Page   7 of   31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-8

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

contents of which are subject to accurate
determination by reference to the internet address
that is printed on the article itself.  (Evid. Code
§ 452(h).)  Accordingly, judicial notice is GRANTED
as to Plaintiff's exhibits A, B, and C.  The Court
notes, however, that "[t]aking judicial notice of a
document is not the same as accepting the truth of
its contents or accepting a particular
interpretation of its meaning."  (Joslin v. H.A.S.
Ins. Brokerage (1986) 184 Cal. App. 3d 369, 374.)

       With respect to Plaintiff's Exhibit D, that
document purports to be the prospectus from
PartyGaming's initial public offering, which
Plaintiff asserts is "not reasonably subject to
dispute and [is] capable of immediate and accurate
determination by resort to sources of reasonably
indisputable accuracy."  (Evid. Code § 452(h).)  The
Court notes, however, that Plaintiff offers no
information to suggest from what sources the
document may be immediately and accurately obtained,
nor does Plaintiff provide any evidence to conclude
that such a source is of "reasonably indisputable
accuracy."  Plaintiff has not "furnish[ed] the court
with sufficient information to enable it to take
judicial notice" of Exhibit D.  (Evid. Code §
453(b).)  Accordingly, Plaintiff's request for
judicial notice of Exhibit D is DENIED.

III.  Defendants Gavin & Sussman

Page  8 of  31   DEPT. 322

| MINUTES ENTERED |
|---|
| 06/14/13 |
| COUNTY CLERK |

**ADD-9**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                          **DEPT**. 322

HONORABLE  LEE SMALLEY EDMON        JUDGE    N. NAVARRO        DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#6
          M. CARRILLO, C.A.    Deputy Sheriff    NONE            Reporter

| | | |
|---|---|---|
| 3:00 pm | BC463623 | |
| | | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | Defendant Counsel |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

As an initial matter, Plaintiff has conceded
that his non-derivative causes of action 4 and 5 are
prohibited under Delaware law and "concedes that his
individual claims in this action (Claims IV and V)
should be dismissed with prejudice." (Mar. 12 2012
Joint Status Report, p. 4; see also Feb. 22, 2013
Joint Status Report, p. 8 ["Plaintiff does not
intend to pursue his individual claims (Claims IV
and V)"].) Accordingly, the demurrer is SUSTAINED
WITH PREJUDICE as to causes of action 4 and 5 for
lack of standing to bring those claims as an
individual rather than as a shareholder on behalf of
the trust. Accordingly, the remainder of the
Court's analysis focuses exclusively on the three
remaining derivative claims for breach of fiduciary
duty, negligence, and waste.

A.  Demand Requirement

Gavin and Sussman's primary argument in
demurrer is that Plaintiff failed to make a demand
on the board of trustees for the trust to pursue the
instant claims before pursuing them in a derivative
action. The Trust is a statutory trust organized
under the laws of Delaware, and both parties agree
that Delaware law governs, at least as it pertains
to the pre-suit demand requirement. (Bezirdjian v.
O'Reilly (2010) 183 Cal.App.4th 316, 322 [applying
Delaware law to pre-suit demand requirement where
corporation was incorporated under Delaware law and
parties agreed that Delaware applied].)

Page   9 of  31   DEPT. 322

| MINUTES ENTERED |
|---|
| 06/14/13 |
| COUNTY CLERK |

ADD-10

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                      **DEPT.** 322

HONORABLE  LEE SMALLEY EDMON        JUDGE   N. NAVARRO           DEPUTY CLERK

HONORABLE                    JUDGE PRO TEM                ELECTRONIC RECORDING MONITOR
#6
         M. CARRILLO, C.A.    Deputy Sheriff   NONE              Reporter

3:00 pm  BC463623                    Plaintiff
                                     Counsel
         STEVEN H WODKA                        NO APPEARANCES
         VS                          Defendant
         CAUSEWAY CAPITAL MANAGEMENT LLC  Counsel
         PLTF. 170.6 JOHNSON
         PLTF. 170.1 HIGHBERGER
         DEEMED COMPLEX (6-21-11)

**NATURE OF PROCEEDINGS:**

    Title 12 of the Delaware Code section 3816(a)
provides that "[a] beneficial owner may bring an
action  in the right of a statutory trust to
recover a judgment in its favor if persons with
authority to do so have refused to bring the action
or if an effort to cause those persons to bring the
action is not likely to succeed."  In such an
action, a plaintiff who fails to make a pre-suit
demand must "set forth with particularity  the
reasons for not making the effort."  (12 Del. C. §
3816(c); Del. Ch. Ct. R. 23.1.)   The purpose for
this demand requirement is clear:  to protect the
decision-making authority of the directors or
trustees.

"By its very nature the derivative action impinges
on the managerial freedom of directors.  Hence, the
demand requirement of Chancery Rule 23.1 exists at
the threshold, first to insure that a stockholder
exhausts his intracorporate remedies, and then to
provide a safeguard against strike suits. Thus, by
promoting this form of alternate dispute resolution,
rather than immediate recourse to litigation, the
demand requirement is a recognition of the
fundamental precept that directors manage the
business and affairs of corporations.  (Aronson v.
Lewis (Del. 1984) 473 A.2d 805, 811-12 [overruled on
other grounds in Brehm v. Eisner (Del. 2000) 746
A.2d 244].)

                    Page  10 of  31   DEPT. 322

ADD-11

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON        JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE                JUDGE PRO TEM<br>#6 | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.        Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:00 pm | BC463623 | Plaintiff<br>Counsel | |
| | STEVEN H WODKA<br>VS<br>CAUSEWAY CAPITAL MANAGEMENT LLC<br>PLTF. 170.6 JOHNSON<br>PLTF. 170.1 HIGHBERGER<br>DEEMED COMPLEX (6-21-11) | | NO APPEARANCES |
| | | Defendant<br>Counsel | |

**NATURE OF PROCEEDINGS:**

"Because such derivative suits challenge the
propriety of decisions made by directors pursuant to
their managerial authority, we have repeatedly held
that the stockholder plaintiffs must overcome the
powerful presumptions of the business judgment rule
before they will be permitted to pursue the
derivative claim."  (Rales v. Blasband (Del. 1993)
634 A.2d 927, 933.)

        Plaintiff argues "[t]his Court should allow
Plaintiff to proceed ... without first making a
demand on the Board for three reasons."  (Opp. to
G&S Dem., p. 11.)  Plaintiff first asserts that any
demand on the board was "not likely to succeed"
pursuant to 12 Delaware Code section 3816(a) because
the board did not initiate a lawsuit on its own.
(Opp. to G&S Dem., p. 11.)  Second, Plaintiff
contends that demand is excused because the trustees
in this case "face a 'substantial likelihood' of
criminal and civil liability" for their conduct on
the Board.  (Opp. to G&S Dem., pp. 11-12.)  And
third, Plaintiff argues that the board of trustees
is not "independent" because its relationship with
the Opposing Funds and CCM renders it "affiliated"
with and therefore "interested" and not
"independent" decision-makers.  (Opp. to G&S Dem.,
pp. 12-13.)

        1.  The Trust's Decision not to Bring Suit
Is not Evidence of Futility

Page  11 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-12

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                          **DEPT.** 322

HONORABLE LEE SMALLEY EDMON          JUDGE    N. NAVARRO        DEPUTY CLERK

HONORABLE                      JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#6
      M. CARRILLO, C.A.    Deputy Sheriff   NONE                    Reporter

3:00 pm  BC463623                     Plaintiff
                                      Counsel
         STEVEN H WODKA                       NO APPEARANCES
         VS                           Defendant
         CAUSEWAY CAPITAL MANAGEMENT LLC  Counsel
         PLTF. 170.6 JOHNSON
         PLTF. 170.1 HIGHBERGER
         DEEMED COMPLEX (6-21-11)

**NATURE OF PROCEEDINGS:**

    Plaintiff's contention that the Trust's failure
to bring suit is itself evidence that a demand would
have been futile is unpersuasive. As Gavin and
Sussman note in reply, this argument would
eviscerate the pre-suit demand rule.  (G&S Reply, p.
3.)  Under this theory, the pre-suit demand
requirement would be waived any time a corporation
or statutory trust decided not to bring suit.  But
"the demand requirement of Rule 23.1 is a rule of
substantive right designed to give a corporation the
opportunity to rectify an alleged wrong without
litigation, and to control any litigation which does
arise."  (Aronson v. Lewis, supra, 473 A.2d at 809.)
Plaintiff's theory of futility, however, would force
the Trust (and every other corporation or trust) to
bring every lawsuit it could conceivably file or
risk losing its authority to control litigation.
Plaintiff cites no authority for such a radical
proposition, and the Court finds none.

2.  Plaintiff Does not Allege a "Substantial
Likelihood" that the Board Would Face Criminal or
Civil Liability

    It is useful here to mention the standards for
assessing demand futility under Delaware law. In
cases such as this where the suit challenges an
affirmative decision of the Board, a demand will
only be deemed futile, and therefore excusable, if
there is a reasonable doubt that: "(1) the directors
are disinterested and independent and (2) the

             Page  12 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-13

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                        **DEPT**. 322

HONORABLE  LEE SMALLEY EDMON        JUDGE   N. NAVARRO        DEPUTY CLERK

HONORABLE                JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#6
       M. CARRILLO, C.A.   Deputy Sheriff   NONE                Reporter

3:00 pm   BC463623                      Plaintiff
                                        Counsel
          STEVEN H WODKA                      NO APPEARANCES
          VS                            Defendant
          CAUSEWAY CAPITAL MANAGEMENT LLC  Counsel
          PLTF. 170.6 JOHNSON
          PLTF. 170.1 HIGHBERGER
          DEEMED COMPLEX (6-21-11)

**NATURE OF PROCEEDINGS:**

challenged transaction was otherwise the product of
a valid exercise of business judgment." (Id.)
"[W]here officers and directors are under an
influence which sterilizes their discretion, they
cannot be considered proper persons to conduct
litigation on behalf of the corporation. Thus,
demand would be futile." (Aronson, supra, 473 A.2d
at 814.)

But a "sterilizing influence" which raises a
"reasonable doubt" as to the board's independence or
disinterestedness cannot be imputed lightly.  The
futility rule "cannot be taken to mean that any
board approval of a challenged transaction
automatically connotes 'hostile interest' and
'guilty participation' by directors, or some other
form of sterilizing influence upon them. Were that
so, the demand requirements of our law would be
meaningless, leaving the clear mandate of Chancery
Rule 23.1 devoid of its purpose and substance."
(Id.)  In some cases, a board's wrongdoing can be
sufficiently egregious that the threat of personal
liability on the directors is a disqualifying
interest, making a demand futile.

But "the mere threat of personal liability for
approving a questioned transaction, standing alone,
is insufficient to challenge either the independence
or disinterestedness of directors, although in rare
cases a transaction may be so egregious on its face
that board approval cannot meet the test of business

Page  13 of 31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-14**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/14/13 | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO    DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #6 |  |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE    Reporter |

| | |
|---|---|
| 3:00 pm | BC463623 |

|  |  |
|---|---|
| | Plaintiff Counsel |
| STEVEN H WODKA | NO APPEARANCES |
| VS | |
| CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel |
| PLTF. 170.6 JOHNSON | |
| PLTF. 170.1 HIGHBERGER | |
| DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

judgment, and a substantial likelihood of director
liability therefore exists."  (Id. at 815.)
Delaware Courts generally agree that the test is
whether there is a "substantial likelihood" that the
board members would face personal criminal or civil
liability.  (See, e.g., Wood v. Baum (Del. 2008) 953
A.2d 136, 141.)

       a.  18 U.S.C. Section 1955

Here, Plaintiff asserts that any demand on the Board
would have been futile because a majority of the
board of trustees faces a "substantial likelihood"
of criminal or civil liability.  Specifically,
Plaintiff asserts that they face a substantial
likelihood of criminal liability under 18 U.S.C.
section 1955 which makes it a crime to "own all or
part of an illegal gambling business," punishable by
up to five years in prison  (18 U.S.C. § 1955(a).)
The parties vigorously debate whether section 1955
is intended to criminalize minority shareholding of
a publicly traded gambling company.  But the Court
need not resolve this question conclusively because
the question is not whether the act was technically
illegal.  The question is whether the trustees face
a "substantial likelihood" of being held criminally
liable for it.

Even assuming for the sake of argument that minority
investment in a publicly traded gambling company
falls under the auspices of section 1955, the

      Page  14 of  31    DEPT. 322

ADD-15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | DEPT. 322 |
| HONORABLE LEE SMALLEY EDMON   JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #6 | | |
| M. CARRILLO, C.A.   Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | | NO APPEARANCES |
| | STEVEN H WODKA | |
| | VS | Defendant Counsel |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

NATURE OF PROCEEDINGS:

Complaint does not allege a substantial likelihood that the trustees face criminal liability.  As Vice Chancellor Parsons of the Delaware Chancery Court recently noted in dismissing a nearly identical lawsuit brought by counsel in this case,  "[d]espite having been enacted more than forty years ago and the fact that U.S. investors have been able to passively invest as stockholders in offshore gambling enterprises since the mid-2000s, the Complaint contains no allegation that any law enforcement authority or court has interpreted § 1955 to apply to passive stockholders."   (Hartsel v. Vanguard Group (Del. Ch. 2011) 2011 WL 2421003, 25 [aff'd in Hartsel v. Vanguard Group (Del. Supr. 2012) 2012 WL 171881]; see also Gamoran v. Berman (S.D.NY 2013) 2013 U.S. Dist. LEXIS 45887, 12-13 [quoting same language in Hartsel and agreeing that the plaintiff in that case had failed to allege illegal conduct under section 1955 by mere stock purchase in NETeller].)

Here, as in Hartsel, Plaintiff cannot identify a single enforcement action seeking to hold a passive investor liable for purchasing stock in a publicly traded gambling business. Indeed, it is notable that some seven years after the complaint alleges the government began its 2006 "crackdown" on illegal gambling websites, Plaintiff is unable to identify a single passive minority investor who was held liable.  (See Litt v. Wycoff (Del. Ch. 2003) 2003 Del. Ch. LEXIS 23, 30 fn.46 [dismissing for failure

Page  15 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-16

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | | |
|---|---|---|---|
| DATE: 06/14/13 | | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| | |
|---|---|
| 3:00 pm | BC463623 |
| | STEVEN H WODKA |
| | VS |
| | CAUSEWAY CAPITAL MANAGEMENT LLC |
| | PLTF. 170.6 JOHNSON |
| | PLTF. 170.1 HIGHBERGER |
| | DEEMED COMPLEX (6-21-11) |

Plaintiff
Counsel

NO APPEARANCES

Defendant
Counsel

**NATURE OF PROCEEDINGS:**

to make a demand where "there [was] no allegation
that any criminal prosecution or regulatory
enforcement action has ever been initiated" and
noting that "the absence of any enforcement action,
particularly where the regulators are alleged to
have been aware of the conduct, suggests that the
regulators, who are presumed to have expertise in
their particular field, did not consider the conduct
worthy of further enforcement proceedings"].)

It is not enough for Plaintiff to allege that the
board of trustees committed a technical violation of
section 1955 (though the absence of a single such
prosecution or investigation strongly suggests they
did not). Rather, Plaintiff must allege that this
is the "rare case" where the board's conduct was "so
egregious on its face" that the individual trustees
face a "substantial likelihood" of personal criminal
liability. (Aronson, supra, 473 A.2d at 815.) In
the more than 40-year history of section 1955,
Plaintiff does not allege a single instance where
such behavior was subject to a criminal conviction,
a criminal prosecution, or even criminal
investigation. Nor has Plaintiff alleged anything
to suggest that the trustees of the Trust would face
a "substantial likelihood" of being the first.
Pursuant to 12 Del. C. 3816(c), however, Plaintiff
is required allege such facts and he must do so with
particularity.

    b. Other Criminal Liability

Page  16 of  31    DEPT. 322

ADD-17

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | **DEPT**. 322 |
|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | STEVEN H WODKA VS CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel | |
| | PLTF. 170.6 JOHNSON PLTF. 170.1 HIGHBERGER DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

While Plaintiff only raises the issue of section 1955 in opposition to Gavin and Sussman's demurrer, the issue of potential criminal and civil liability is more fully addressed in the CCM Defendants' demurrer (which Gavin and Sussman join). Accordingly, it is worth addressing other arguments on this point raised by Plaintiff in opposition to the CCM Defendants' demurrer. Plaintiff argues that, in addition to section 1955, pre-suit demand was excused because the board of trustees would also be subject to criminal liability for violations of Cal. Pen. Code section 337j and N.Y. Penal Law section 225.00(5). (Opp. to CCM Dem., p. 9.)

But California Penal Code section 337j does not prohibit passive stockholder ownership in a publicly traded gambling company. Rather, it subjects operators of unlicensed gambling ventures to criminal liability. Moreover, Plaintiff's citation to a New York penal statute is curious because the Complaint does not allege anything to suggest that any of the alleged activity has any connection to the state of New York. And in any event, the New York penal statute concerns individuals who actively "participate in the proceeds of gambling activity" (N.Y. Penal Law § 225.00(5) [emphasis added]), not passive stockholder investors. The Complaint does not allege any "substantial likelihood" that any of the trustees would be subject to criminal liability in either California or New York.

Page 17 of 31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-18

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | **DEPT.** 322 |
|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
|---|---|---|---|
| | STEVEN H WODKA VS CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel | |
| | PLTF. 170.6 JOHNSON PLTF. 170.1 HIGHBERGER DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

       c.  Common Law Civil Liability

Plaintiff further asserts that the board is disqualified because it faces a substantial likelihood of civil liability under the common law causes of action alleged in the complaint. Plaintiff first asserts that civil liability was sufficiently likely to excuse the demand requirement on a theory of negligence per se because the board's conduct violated section 1955. As discussed above, however, the Complaint fails to allege that the board faced a substantial likelihood of criminal liability under section 1955, and Plaintiff's attempt to bootstrap that unsuccessful argument on a theory of negligence per se is equally unavailing.

The remainder of Plaintiffs' argument that the trustees faced a substantial likelihood of common law civil liability essentially repeats the causes of action for breach of fiduciary duty and waste. (Opp. to CCM Def. Dem., pp. 12-15 [trustees are likely to be held liable for breach of fiduciary duty, negligence per se, and waste].) That is, Plaintiff alleges that the trustees cannot have been independent because there is a substantial likelihood that Plaintiff (and other Plaintiffs like him) would sue for the causes of action alleged in the complaint. But the fact that Plaintiff has brought suit is not, itself, evidence of a substantial likelihood that trustees of the Trust

Page  18 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-19**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/14/13 | **DEPT.** 322 |

| | | | |
|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| | | | |
|---|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
| | STEVEN H WODKA VS CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel | |
| | PLTF. 170.6 JOHNSON PLTF. 170.1 HIGHBERGER DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

would face civil liability, and therefore disqualify
them from entertaining a pre-suit demand.  "[B]oard
approval of a challenged transaction [does not]
automatically connote[] 'hostile interest' and
'guilty participation' to disqualify the board from
entertaining a pre-suit demand." (Aronson, supra,
473 A.2d at 814.)

Indeed, the pre-suit demand requirement is
frequently used to promote alternative dispute
resolution between a shareholder (like Plaintiff)
and the board (Grimes v. Donald (1996) 673 A.2d
1207, 1216 ["The demand requirement serves a
salutary purpose. First, by requiring exhaustion of
intracorporate remedies, the demand requirement
invokes a species of alternative dispute resolution
procedure which might avoid litigation
altogether"].)  The fact that a shareholder might
have or bring a civil cause of action is not
sufficient to excuse demand.

Moreover, Plaintiff's claim that the trustees were
substantially likely to face civil liability must
surmount the significant hurdle imposed by the
declaration of trust.  Under Delaware law, the
"governing instrument [of a statutory trust] may
provide for the limitation or elimination of any and
all liabilities for breach of contract and breach of
duties (including fiduciary duties)  ." (12 Del.
C. § 3806(e).)  The declaration of trust in this
case contains such a limitation. Specifically,

Page  19 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                           DEPT. 322

HONORABLE LEE SMALLEY EDMON        JUDGE   N. NAVARRO        DEPUTY CLERK

HONORABLE                        JUDGE PRO TEM              ELECTRONIC RECORDING MONITOR
#6
            M. CARRILLO, C.A.      Deputy Sheriff   NONE              Reporter

| 3:00 pm | BC463623 | | |
|---|---|---|---|
| | STEVEN H WODKA | Plaintiff Counsel | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

section 8.1 of the declaration of trust states that
"[a] Trustee, when acting in such a capacity, shall
not be personally liable to any person for any act,
omission, or obligation of the Trust or any Trustee"
with the exception of conduct amounting to "willful
misfeasance, bad faith, gross negligence, or
reckless disregard of the duties involved in the
conduct of the office of Trustee hereunder."  (Gavin
& Sussman RJN, Exh. B, p. 17.)

     That is, for any trustee to face a
disqualifying level of civil liability, that trustee
(in deciding to invest in PartyGaming and NETeller)
must have acted with ""willful misfeasance, bad
faith, gross negligence, or reckless disregard."
This exculpatory clause stands in addition to the
"powerful presumptions of the business judgment
rule" that every plaintiff must overcome "before
they will be permitted to pursue the derivative
claim."  (Rales v. Blasband, supra, 634 A.2d at
933.)  Plaintiff attempts to overcome this powerful
presumption that the trustees did not act according
to their best business judgment rather than in bad
faith by arguing that fiduciaries may not cause a
corporation (or a trust) to act unlawfully.  (Opp.
to CCM Def. Dem., pp. 12-14.)

     But again, the fact that one could conceivably
read section 1955 to include passive investment in a
publicly traded overseas gambling business  does not
establish a substantial likelihood that the trustees

Page  20 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-21

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | DEPT. 322 |
|---|---|---|
| HONORABLE LEE SMALLEY EDMON   JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6   JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR | |
| M. CARRILLO, C.A.   Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

would be found liable for tortious conduct committed
in bad faith.  The authorities cited by Plaintiff
are concerned with breach of fiduciary duties as a
result of the intentional violation of
well-established legal principles.  (See Desimone v.
Barrows (Del. Ch. 2007) 924 A.2d 908 [stock-option
backdating]; Metro Communication Corp. BVI v.
Advanced Mobilecomm Techn., Inc. (Del. Ch. 2004) 854
A.2d 130-31 [board members who knew of bribery in
securing necessary permits and lied about it to the
shareholders]; Guttman v. Huang (Del. Ch. 2003) 823
A.2d 492, 505 [discussing bad faith in the context
of insider trading and finding no bad faith because
the complaint failed to allege that the board
members "consciously acted to exploit such superior
knowledge"].)

     The Complaint clearly alleges that the trustees
knew of substantial risks when they invested in an
industry that could potentially lose a substantial
market if operations in the U.S. shut down.  But
"the mere fact that a company takes on a business
risk and suffers losses -even catastrophic losses -
does not evidence misconduct and, without more, is
not a basis for personal director liability."  (In
re Citigroup Inc. Shareholder Derivative Litg.
(2009) 964 A.2d 106, 130.)  Instead, in order to
establish a "substantial likelihood" of civil
liability to excuse a pre-suit demand, the Complaint
must specifically allege facts to suggest that the
decision to invest in PartyGaming and NETeller was

Page  21 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-22**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

so obviously illegal that the trustees consciously decided to engage in criminal activity by passively investing in publicly traded stock listed on an international exchange.  This Court agrees with every other court to consider a similar question and determines that Plaintiff has not done so.

Nor is Plaintiff's insistence that the trustees are "substantially likely" to be held liable for waste persuasive.  Indeed, Plaintiff's brief argument as to waste merely asserts that "the investments were for improper and unnecessary purposes."  (Opp. to CCM Def. Dem., p. 15.)  But nothing in Plaintiff's argument that the trustees paid too much for the shares in PartyGaming and NETeller establishes sufficient bad faith to overcome the high bar of the declaration of trust's exculpatory clause and the "powerful presumptions" of the business judgment rule.

3.  The Complaint does not Adequately Allege that a Majority of the Board is "Interested" in the Opposing Funds or CCM to Waive the Pre-Suit Demand Rule

    Plaintiff's final argument in favor of excusing the pre-suit demand requirement asserts that the Board's trustees are not "independent" because the Complaint adequately alleges that the Board's relationship with the Fund, the Opposing Funds, an CCM is an "affiliated" and "interested" relationship

Page  22 of  31    DEPT. 322

| |
|---|
| **MINUTES ENTERED** 06/14/13 **COUNTY CLERK** |

**ADD-23**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                                      **DEPT.** 322

HONORABLE  LEE SMALLEY EDMON        JUDGE    N. NAVARRO            DEPUTY CLERK

HONORABLE                          JUDGE PRO TEM           ELECTRONIC RECORDING MONITOR
#6
                M. CARRILLO, C.A.   Deputy Sheriff   NONE              Reporter

---

3:00 pm  BC463623                          Plaintiff
                                           Counsel
          STEVEN H WODKA                              NO APPEARANCES
          VS                               Defendant
          CAUSEWAY CAPITAL MANAGEMENT LLC  Counsel
          PLTF. 170.6 JOHNSON
          PLTF. 170.1 HIGHBERGER
          DEEMED COMPLEX (6-21-11)

---

**NATURE OF PROCEEDINGS:**

under the 1940 Act sufficient to excuse pre-suit
demand.  (Opp. to G&S Dem., p. 12.)  This assertion
is grounded in the allegation in the complaint that
the Fund pays 98% of the management fees paid by the
Trust to CCM and subsidizes management fees that
would otherwise be due from the Opposing Funds.
According to Plaintiff, because the board of
trustees owes fiduciary duties to the Opposing
Funds, as well, they are inherently conflicted
because the relief Plaintiff seeks would require the
Opposing Funds to pay their fair share of management
fees.  (Comp.,  92-98; Opp. to G&S Dem., p. 13)

          Pursuant to 12 Delaware Code section 3801(d) an
"independent trustee" of a statutory trust "shall be
deemed to be independent and disinterested for all
purposes."  An "independent trustee," by turn, is
defined in 12 Del. C. § 3801(d) as "any trustee who
is not an 'interested person'" as that term is
defined in the Investment Company Act ("ICA," 15
U.S.C. section 80a-2(a)(19)).  Relevant here, an
"interested person" under the ICA means an
"affiliated person" of an investment company as
defined in 15 U.S.C. section 80a-2(a)(3).  A person
is an "affiliated person" of an investment company
if "the trustee is 'controlled by' or 'controls' its
investment advisor."  (Hartsel, supra, 2011 WL
2421003, 21; see also 15 U.S.C. 80a-2(a)(3)(C).)  As
Vice Chancellor Parsons succinctly noted in Hartsel:

"The ICA defines 'control' as the 'power to exercise

                    Page  23 of  31    DEPT. 322

                                          **MINUTES ENTERED**
                                          06/14/13
                                          **COUNTY CLERK**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #6 | | |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | Defendant |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Counsel |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company. It further specifies, however, that a natural person will be presumed not to be a controlled person. In addition, pursuant to [Delaware law], if a trustee is not an interested person under the ICA, he will be deemed to be independent and disinterested for all purposes. Thus, because the Trustee Defendants to whom Plaintiffs would have needed to make their demand are natural persons, they are presumed to be independent and disinterested for all purposes under Delaware law." (Hartsel, supra, 2011 WL 2421003, 21 [footnotes omitted] [emphasis added]; see also 15 U.S.C. 80a-2(a)(9).)

To rebut this presumption that the trustees, as natural persons, are independent and disinterested as a matter of law, Plaintiff alleges that the Fund controls the trustees, the Opposing Funds, and CCM by virtue of the fact that the Fund pays the lion's share of the management fees. To begin with, neither the Complaint nor the briefing presents any allegations to suggest that the Fund exercises control over CCM simply because it pays management fees to CCM. Rather, the Complaint alleges the opposite: that various CCM employees control the Fund. (See Comp., 20-29.) Nor does the Complaint sufficiently allege that CCM controls the board of trustees of the Trust. As previously noted, the

Page 24 of 31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-25**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

Complaint does not allege any misconduct or affiliation between two of the five trustees (John Graham and Larry Meister - see G&S RJN, Exh. B, p. 26). And as for Defendants Gavin and Sussman, the Complaint does not allege any relationship with CCM whatsoever other than the fact that they were appointed as trustees by CCM. (See Comp., 30.) On the face of the complaint and the judicially noticeable SEC filing, four of the five trustees are unaffiliated with CCM.

The only remaining "conflict of interest" asserted is the fact that the five trustees each owe duties to the four Opposing Funds that are ostensibly adverse due to the management fee subsidies paid by the Fund. Courts have repeatedly rejected this argument. Applying Maryland law on the issue of pre-suit demand futility, the District Court for the Southern District of New York noted that:

"the central premise of plaintiff's argument -- that service on the boards of multiple funds managed by the same investment adviser renders a director unable to consider a demand in good faith -- has been rejected repeatedly by courts applying Maryland law. [Citations]. Thus where, as here, a derivative suit brought on behalf of one fund might have some adverse impact on other funds managed by the same investment adviser and overseen by the same board of directors, it cannot be held that, as a matter of

Page  25 of  31    DEPT. 322

ADD-26

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13                                                    DEPT. 322

HONORABLE LEE SMALLEY EDMON     JUDGE   N. NAVARRO        DEPUTY CLERK

HONORABLE                JUDGE PRO TEM          ELECTRONIC RECORDING MONITOR
#6
      M. CARRILLO, C.A.   Deputy Sheriff   NONE              Reporter

| | | | |
|---|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel | NO APPEARANCES |
| | STEVEN H WODKA | | |
| | VS | Defendant | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Counsel | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

law, directors are so personally conflicted that
they could not consider a demand in good faith and
within the ambit of the business judgment rule. To
hold otherwise would essentially nullify the demand
requirement in situations where the corporation is
an investment firm with multiple related funds."
(Seidl v. Am. Century Cos., supra, 713 F. Supp.2d at
261-62 [footnote omitted].)

Plaintiff attempts to distinguish this reasoning on
the basis that Seidl was decided under Maryland law
where the futility rules are more stringent.  (Pltf.
Supp. Brf., p. 2 fn.1.)  But the thrust of the Seidl
holding on this question is not so limited.  In
fact, Vice Chancellor Parsons in Hartsel cited to
Seidl to similarly hold under Delaware law:

"that trustees who serve on multiple boards within
the same mutual fund complex are not per se
interested persons under the ICA, even though
pursuing one fund's interests within the complex
might adversely affect the complex's other funds.
Thus, service on multiple boards alone is
insufficient to cast reasonable doubt on a trustee's
ability to exercise his business judgment as to
whether to accept a stockholder's demand to bring
suit against a board of trustees or others."
(Hartsel, supra, 2011 WL 2421003, 22 [footnote
omitted].)

     The rationale expressed by both jurists is

                    Page  26 of  31   DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

ADD-27

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/14/13 | DEPT. 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO    DEPUTY CLERK |
| HONORABLE #6    JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE    Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | Defendant Counsel |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

persuasive.  Plaintiff's assertion of bias must overcome a strong presumption of independence.  But to demonstrate that bias, Plaintiff's argument boils down to an argument that because the trustees manage multiple funds, one of which pays the lion's share of the management fees for the trust, the trustees cannot be independent.  But Plaintiff's logic would "essentially nullify the demand requirement" for any derivative action involving a mutual fund.  The structure alleged by Plaintiff is common in the mutual fund industry and the fact that some of those funds may have adverse interests to other funds does not, by itself, overcome the strong presumption that natural persons are independent trustees.  (See Bloom v. Bradford (E.D.NY. 1979) 480 F.Supp. 139, 148 ["the mutual fund industry tends to be organized into mutual fund complexes   usually consist[ing] of distinct mutual funds each with its own investment objectives and managed by a single investment adviser and an interlocking board of directors; The Vanguard Gp., Investment Company Act Release No. 11645 (SEC 1981) 1981 WL 36522, 5 fn. 35 [22 S.E.C. Docket 238 (Feb. 25, 1981)] ["Interlocking boards of directors within a[ ] [mutual fund] investment complex are neither prohibited nor uncommon"].)

    C.  Summary as to Gavin & Sussman

    In order to excuse Plaintiff's duty to file a pre-suit demand on the basis that such a demand would have been futile, Plaintiff must "set forth

Page  27 of  31    DEPT. 322

**MINUTES ENTERED**
06/14/13
**COUNTY CLERK**

ADD-28

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 06/14/13 | | | DEPT. 322 |
|---|---|---|---|
| HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Counsel | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

with particularity  the reasons for not making the effort."  (12 Del. C. § 3816(c); Del. Ch. Ct. R. 23.1.)  For the reasons discussed above, Plaintiff's allegations of futility are inadequate.  The trustees' decision not to bring suit on behalf of the Trust is not itself evidence of futility. Plaintiff has also failed to allege with particularity any reasonable doubt that the directors are not independent because he has failed to allege any "substantial likelihood" of criminal or civil liability, particularly in light of the strong exculpatory clause in the declaration of trust.  Nor has Plaintiff alleged any facts to overcome the strong presumption that, as natural persons, four of the five trustees are "independent and disinterested" under Delaware law.

In light of those deficiencies, all of which appear on either on the face of the complaint or in judicially noticeable documents, Plaintiff has failed to sufficiently allege that a pre-suit demand on the board would have been so futile as to justify bypassing the normal alternative dispute resolution function played by a pre-suit demand.  To permit Plaintiff to proceed without such allegations would improperly "impinge[] on the managerial freedom" of the trustees and violate the "fundamental precept that directors manage the business and affairs of corporations." (Aronson, supra, 473 A.2d at 811-12.) Accordingly Gavin and Sussman's demurrer is SUSTAINED.

Page  28 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-29**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 06/14/13 | | **DEPT.** 322 |
| HONORABLE LEE SMALLEY EDMON    JUDGE | N. NAVARRO | DEPUTY CLERK |
| HONORABLE                JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #6 | | |
| M. CARRILLO, C.A.    Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 3:00 pm | BC463623 | Plaintiff Counsel |
| | STEVEN H WODKA | NO APPEARANCES |
| | VS | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel |
| | PLTF. 170.6 JOHNSON | |
| | PLTF. 170.1 HIGHBERGER | |
| | DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

III.    CCM Defendants and Nominal Defendants

As Plaintiff has conceded that the individual and class action causes of action are prohibited in this case, the only remaining claims against the CCM Defendants are derivative claims, which are subject to the pre-suit demand requirement.  Because Plaintiff did not make such a demand and has not adequately alleged futility, all three derivative causes of action are precluded, irrespective of whether they are alleged against a trustee or a non-trustee.

Here both the CCM Defendants and the Trust join in Gavin and Sussman's demurrer, and the demurrer is likewise SUSTAINED as to the CCM Defendants and the Trust.

IV.    Conclusion

In light of the foregoing, the demurrers of all Defendants are SUSTAINED as to all five causes of action alleged in the Complaint.  Because Plaintiff has conceded that causes of action four and five are precluded as individual and class claims, the demurrer is SUSTAINED WITHOUT LEAVE TO AMEND as to all Defendants for causes of action four and five. As to the derivative causes of action one through three, the Court notes that this is only the initial complaint.  While Plaintiff has failed to

Page  29 of  31    DEPT. 322

MINUTES ENTERED
06/14/13
COUNTY CLERK

**ADD-30**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 06/14/13 | | DEPT. 322
---|---|---
HONORABLE LEE SMALLEY EDMON | JUDGE | N. NAVARRO | DEPUTY CLERK
HONORABLE #6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR
M. CARRILLO, C.A. | Deputy Sheriff | NONE | Reporter

| | |
|---|---|
| 3:00 pm | BC463623 |

| | |
|---|---|
| STEVEN H WODKA | Plaintiff Counsel |
| VS | NO APPEARANCES |
| CAUSEWAY CAPITAL MANAGEMENT LLC | Defendant Counsel |
| PLTF. 170.6 JOHNSON | |
| PLTF. 170.1 HIGHBERGER | |
| DEEMED COMPLEX (6-21-11) | |

**NATURE OF PROCEEDINGS:**

sufficiently allege futility in his first attempt at
a Complaint, it is at least conceivable that
Plaintiff may yet be able to allege futility.  In
light of the liberal standards for amendment, the
demurrers as to causes of action one through three
are SUSTAINED WITH LEAVE TO AMEND as to all
Defendants.

  Plaintiff is to file an amended complaint, if
at all, within 30 days.

Counsel for plaintiff is to give notice.


       CLERK'S CERTIFICATE OF MAILING


I, the below-named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am
not a party to the cause herein, and that on this
date I served the minute order dated 6/14/13
upon each party or counsel named below by placing
the document for collection and mailing so as to
cause it to be deposited in the United States mail
at the courthouse in Los Angeles,
California, one copy of the original filed/entered
herein in a separate sealed envelope to each address
as shown below with the postage thereon fully prepaid,
in accordance with standard court practices.


Page  30 of  31   DEPT. 322

| |
|---|
| MINUTES ENTERED 06/14/13 COUNTY CLERK |

**ADD-31**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 06/14/13 | DEPT. 322 |
| HONORABLE LEE SMALLEY EDMON     JUDGE | N. NAVARRO      DEPUTY CLERK |
| HONORABLE           JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| #6      M. CARRILLO, C.A.    Deputy Sheriff | NONE          Reporter |

| 3:00 pm | BC463623 | Plaintiff Counsel | |
|---|---|---|---|
| | STEVEN H WODKA | | NO APPEARANCES |
| | VS | Defendant Counsel | |
| | CAUSEWAY CAPITAL MANAGEMENT LLC | | |
| | PLTF. 170.6 JOHNSON | | |
| | PLTF. 170.1 HIGHBERGER | | |
| | DEEMED COMPLEX (6-21-11) | | |

**NATURE OF PROCEEDINGS:**

Dated: June 14, 2013

John A. Clarke, Executive Officer/Clerk

By: _N. Navarro_____
        N. NAVARRO, Deputy Clerk


Crystal Foley
SIMMONS BROWDER GIANARIS
100 N. Sepulveda Blvd., Ste 1350
El Segundo, CA 90245



John Spiegel
MUNGER TOLLES & OLSON
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071

| MINUTES ENTERED |
|---|
| 06/14/13 |
| COUNTY CLERK |

**18 U.S.C. § 1955**

**(a)** Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.

**(b)** As used in this section--

    **(1)** "illegal gambling business" means a gambling business which--

        **(i)** is a violation of the law of a State or political subdivision in which it is conducted;

        **(ii)** involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

        **(iii)** has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

    **(2)** "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

    **(3)** "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**(c)** If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

**(d)** Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizures, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures

incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

**(e)** This section shall not apply to any bingo game, lottery, or similar game of chance conducted by an organization exempt from tax under paragraph (3) of subsection (c) of section 501 of the Internal Revenue Code of 1986, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member, or employee of such organization except as compensation for actual expenses incurred by him in the conduct of such activity

**15 U.S.C.A. § 80a-35(b)**

**(b)** Compensation or payments as basis of fiduciary duty; civil actions by Commission or security holder; burden of proof; judicial consideration of director or shareholder approval; persons liable; extent of liability; exempted transactions; jurisdiction; finding restriction

For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

**(1)** It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

**(2)** In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

**(3)** No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the

amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

**(4)** This subsection shall not apply to compensation or payments made in connection with transactions subject to section 80a-17 of this title, or rules, regulations, or orders thereunder, or to sales loads for the acquisition of any security issued by a registered investment company.

**(5)** Any action pursuant to this subsection may be brought only in an appropriate district court of the United States.

**(6)** No finding by a court with respect to a breach of fiduciary duty under this subsection shall be made a basis (A) for a finding of a violation of this subchapter for the purposes of sections 80a-9 and 80a-48 of this title, section 78*o* of this title, or section 80b-3 of this title, or (B) for an injunction to prohibit any person from serving in any of the capacities enumerated in subsection (a) of this section.

**Del. Code Ann. tit. 12, § 3801(d)**

**(d)** "Independent trustee" means, solely with respect to a statutory trust that is registered as an investment company under the Investment Company Act of 1940, as amended (15 U.S.C. § 80a-1 et seq.), or any successor statute thereto (the "1940 Act"), any trustee who is not an "interested person" (as such term is defined below) of the statutory trust; provided that the receipt of compensation for service as an independent trustee of the statutory trust and also for service as an independent trustee of 1 or more other investment companies managed by a single investment adviser (or an "affiliated person" (as such term is defined below) of such investment adviser) shall not affect the status of a trustee as an independent trustee under this chapter. An independent trustee as defined hereunder shall be deemed to be independent and disinterested for all purposes. For purposes of this definition, the terms "affiliated person" and "interested person" have the meanings set forth in the 1940 Act or any rule adopted thereunder.

ADD-37

**Del. Code Ann. tit. 12, § 3806(i)**

**(i)** Except to the extent otherwise provided in the governing instrument of a
statutory trust, a trustee of a statutory trust has the power and authority to
delegate to 1 or more other persons the trustee's rights and powers to manage
and control the business and affairs of the statutory trust, including to delegate
to agents, officers and employees of the trustee or the statutory trust, and to
delegate by management agreement or other agreement with, or otherwise to,
other persons. Except to the extent otherwise provided in the governing
instrument of a statutory trust, such delegation by a trustee of a statutory trust
shall not cause the trustee to cease to be a trustee of the statutory trust or cause
the person to whom any such rights and powers have been delegated to be a
trustee of the statutory trust.