# 13-1589-cv(L),
## 13-1779-cv(XAP), 13-1791-cv(XAP)

# United States Court of Appeals
*for the*
# Second Circuit

———————————————

BENJAMIN M. GAMORAN, derivatively on behalf of the nominal defendant with respect to its series mutual fund, the Neuberger Berman International Fund,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

NEUBERGER BERMAN LLC, NEUBERGER BERMAN MANAGEMENT LLC, BENJAMIN SEGAL, PETER E. SUNDMAN, JACK L. RIVKIN, JOHN CANNON, FAITH COLISH, C. ANNE HARVEY, ROBERT A. KAVESH, HOWARD A. MILEAF, EDWARD I. O'BRIEN, WILLIAM E. RULON, CORNELIUS T. RYAN, TOM D. SEIP, CANDACE L. STRAIGHT, PETER P. TRAPP, NEUBERGER BERMAN EQUITY FUNDS, DBA NEUBERGER BERMAN INTERNATIONAL FUND,

*Defendants-Appellees-Cross-Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANTS-APPELLEES-CROSS-APPELLANTS NEUBERGER BERMAN LLC, NEUBERGER BERMAN MANAGEMENT LLC, BENJAMIN SEGAL, PETER E. SUNDMAN AND JACK L. RIVKIN

MILBANK, TWEED, HADLEY & MCCLOY
*Attorneys for Defendants-Appellees-Cross-Appellants Neuberger Berman LLC, Neuberger Berman Management LLC, Benjamin Segal, Peter E. Sundman and Jack L. Rivkin*
One Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT .....................................................................1

ARGUMENT .............................................................................................1

I.     PLAINTIFF CONCEDES THAT DISMISSAL SHOULD
HAVE BEEN WITH PREJUDICE .......................................................1

II.    AMENDMENT WOULD BE FUTILE BECAUSE THE 888
AND NETELLER INVESTMENTS WERE NOT ILLEGAL ............2

    A.    Section 1955 Does Not Criminalize Passive Ownership
Of Publicly-Traded Stock ........................................................2

    B.    Section 1955 Cannot Be Applied Extraterritorially...................8

    C.    The Fund's 888 And NETeller Investments Did Not
Violate State Law....................................................................10

III.   PLAINTIFF HAS PROVIDED NO BASIS TO INDICATE
THAT ANY SPECIFIC CLAIMS COULD BE
REHABILITATED THROUGH AMENDMENT ..........................11

    A.    The RICO Claims Cannot Be Fixed ........................................11

    B.    The Fiduciary Duty And Negligence Claims Cannot Be
Fixed.......................................................................................14

    C.    The Negligence *Per Se* Claim Cannot Be Fixed .....................16

    D.    The Waste Claim Cannot Be Fixed .........................................17

    E.    The Breach Of Contract Claim Cannot Be Fixed....................17

    F.    Re-Pleading Would Be Futile Because The Amended
Complaint Is Time-Barred ......................................................18

CONCLUSION .......................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)..................................................................................12

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ........................................................................17

*Brennan v. Kulick*,
   407 F.3d 603 (3d Cir. 2005) .....................................................................18

*Cedeño v. Intech Grp., Inc.*,
   733 F. Supp. 2d 471 (S.D.N.Y. 2010) ......................................................9

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003)....................................................................................4

*Dorchester Investors v. Peak Trends Trust*,
   No. 99 Civ. 4696 (LMM), 2003 WL 223466 (S.D.N.Y. Feb. 3, 2003) ............10

*Dowling v. United States*,
   473 U.S. 207 (1985).....................................................................................7

*Dubai Islamic Bank v. Citibank, N.A.*,
   126 F. Supp. 2d 659 (S.D.N.Y. 2000) .....................................................10

*European Cmty. v. RJR Nabisco, Inc.*,
   814 F. Supp. 2d 189 (E.D.N.Y. 2011) ......................................................9

*Fresh Meadow Food Servs. LLC v. RB 175 Corp.*,
   282 Fed. Appx. 94 (2d Cir. 2008)............................................................13

*GICC Capital Corp. v. Tech. Fin. Grp.*,
   67 F.3d 463 (2d Cir. 1995) .......................................................................14

*Hartsel v. Vanguard Grp., Inc.*,
  C.A. No. 5394-VCP, 2011 Del. Ch. LEXIS 89 (Del. Ch. June 15, 2011),
  *aff'd*, 38 A.3d 1254 (Del.), *cert. denied*, 80 U.S.L.W. 3708 (U.S. June 25,
  2012) .......................................................................................................................3

*Ideal Steel Supply Corp. v. Anza*,
  652 F.3d 310 (2d Cir. 2011) ..............................................................................12

*In re Citigroup Inc. Shareholder Derivative Litigation*,
  964 A.2d 106 (Del. Ch. 2009) ...........................................................................14

*In re Direxion Shares ETF Trust*,
  No. 09 Civ. 8011(KBF), 2012 WL 717967 (S.D.N.Y. Mar. 6, 2012) ..............18

*In re Silver Dragon Chinese Rest.*,
  19 I. & N. Dec. 401 (BIA 1986) ..........................................................................3

*In re UBS AG Sec. Litig.*,
  No. 07 Civ. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ..........2

*Johnson v. United States*,
  559 U.S. 133 (2010).............................................................................................5

*Morrison v. Nat'l Austl. Bank Ltd.*,
  130 S. Ct. 2869 (2010).....................................................................................8, 9

*Nemec v. Shrader*,
  991 A.2d 1120 (Del. 2010) ................................................................................15

*People v. Allen*,
  92 N.Y.2d 378 (N.Y. 1998) ................................................................................11

*People v. Ozarowski*,
  38 N.Y.2d 481 (N.Y. 1976) ................................................................................11

*People v. W. Express Int'l Inc.*,
  19 N.Y.3d 652 (N.Y. 2012) ................................................................................13

*Sanabria v. United States*,
  437 U.S. 54 (1978)...............................................................................................3

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
  119 F.3d 91 (2d Cir. 1997) ................................................................................13

*Seabrook v. Jacobson*,
   153 F.3d 70 (2d Cir. 1998) ................................................................19

*Sugule v. Frazier*,
   639 F.3d 406 (8th Cir. 2011) ...........................................................2, 3

*Taylor v. Kissner*,
   893 F. Supp. 2d 659 (D. Del. 2012)..................................................17

*Trans World Airlines, Inc. v. Summa Corp.*,
   No. 1607, 1986 WL 5671 (Del. Ch. May 15, 1986)..........................15

*United States v. Dauray*,
   215 F.3d 257 (2d Cir. 2000) ...............................................................6

*United States v. DiCristina*,
   886 F. Supp. 2d 164 (E.D.N.Y. 2012) ................................................4

*United States v. DiCristina*,
   No. 12-3720, 2013 WL 3984970 (2d Cir. Aug. 6, 2013) ................3, 4

*United States v. Hawes*,
   529 F.2d 472 (5th Cir. 1976) ..............................................................3

*United States v. Philip Morris USA, Inc.*,
   783 F. Supp. 2d 23 (D.D.C. 2011)......................................................9

*United States v. Wallach*,
   935 F.2d 445 (2d Cir. 1991) ...............................................................4

*White v. Panic*,
   783 A.2d 543 (Del. 2001) .................................................................17

**STATUTES**

12 Del. C. § 3302 ...................................................................................15

15 U.S.C. § 78t(a) ...................................................................................4

18 U.S.C. § 1961 ...................................................................................11

18 U.S.C. § 1962..................................................................................6, 12

28 U.S.C. § 1367................................................................................19, 20

N.Y. Penal Law § 100.00 ................................................................10

N.Y. Penal Law § 105.00 ................................................................10

N.Y. Penal Law § 225.00 ................................................................10

N.Y. Penal Law § 225.05 ................................................................10

# PRELIMINARY STATEMENT

Given the lack of clarity regarding what arguments Plaintiff pursued in his opening brief, the similar lack of clarity in the Response and Reply Brief for Plaintiff-Appellant-Cross-Appellee Benjamin M. Gamoran ("Reply Brief" or "Reply Br.") is not surprising; Plaintiff is even unclear about whether he opposes the cross-appeals.  To ensure that the record for these appeals is clear, the Investment Advisor Defendants will assume that Plaintiff does oppose the cross-appeals and provide responsive argument accordingly.  However, the Court could conclude that Plaintiff waived opposition to the cross-appeals entirely.

# ARGUMENT[1]

## I.    PLAINTIFF CONCEDES THAT DISMISSAL SHOULD HAVE BEEN WITH PREJUDICE

The Reply Brief includes no identified responses to the arguments that:

- The District Court applied the wrong legal standard in dismissing the Amended Complaint without prejudice (IA Br. at 51-52).

- Even if allowed to file another complaint, there is nothing more that Plaintiff could allege to support claims that the Fund's investments in 888 and NETeller were "illegal" (*Id*. at 52).

---

[1]    Capitalized terms not defined herein have the meanings set forth in the Brief for Defendants-Appellees-Cross-Appellants Neuberger Berman LLC, Neuberger Berman Management LLC, Benjamin Segal, Peter E. Sundman and Jack L. Rivkin ("IA Brief").

1

- If this Court agrees that the Fund's investments in 888 and NETeller were not illegal, then the claims in the Amended Complaint fail as a matter of law and re-pleading would be futile (*Id*. at 53).

When a party ignores arguments, it concedes them.[2]  That would be sufficient for the Court to grant the Investment Advisor Defendants' request that the dismissal be affirmed, but with prejudice.  But even if the Court were to deem arguments in the Reply Brief to relate to the cross-appeals, those arguments would fail for the reasons discussed below.

## II.   AMENDMENT WOULD BE FUTILE BECAUSE THE 888 AND NETELLER INVESTMENTS WERE NOT ILLEGAL

Nothing in the Reply Brief supports the argument that passive ownership of publicly-traded stock can be illegal.  That is enough for the Court to hold that dismissal should have been with prejudice.

### A.   Section 1955 Does Not Criminalize Passive Ownership Of Publicly-Traded Stock

Plaintiff argues that purchasing even one share of publicly-traded stock means that the purchaser "owns all or part of [the] ... business" in violation of Section 1955, but cannot cite a single case in which a court has agreed with that interpretation.[3]  No court has held that passive ownership of publicly-traded stock

---

[2]   *See In re UBS AG Sec. Litig.,* No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012).

[3]   Plaintiff cites *Sugule v. Frazier*, 639 F.3d 406 (8th Cir. 2011) to argue that a corporation is "owned" by its shareholders.  (Reply Br. at 6)  *Frazier* merely noted that the Department of Homeland Security had held this in agency

2

violates Section 1955, Plaintiff has never identified attempts to prosecute passive shareholders under Section 1955, and the only court to comment on Plaintiff's theory stated that it was "not convinced that this conduct is criminal."[4]

None of this is surprising because Section 1955 depends on responsible ownership, which requires significant influence over or responsibility for what is owned to create liability. Indeed, this Court's most recent discussion of Section 1955 made clear that Section 1955 "criminalizes the act of running a gambling business that" otherwise meets the statute's requirements.[5] That is

---

decisions. 639 F.3d at 412. But those agency decisions did not deal with publicly-traded corporations (they only considered a partnership and a closely-held corporation) and did not address what *Section 1955* means by "own." *See In re Silver Dragon Chinese Rest.*, 19 I. & N. Dec. 401, 402-03 (BIA 1986); *In re M*, 8 I. & N. Dec. 24, 42–44 (BIA 1958). Although *Sanabria v. United States*, 437 U.S. 54 (1978) (Reply Br. at 9) and *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976) (Reply Br. at 8) dealt with Section 1955, neither addressed (or even mentioned) whether a passive shareholder of a publicly-traded corporation "owns" that corporation for the purposes of Section 1955. Both defendants were directly involved in operating the businesses at issue. *See Sanabria*, 437 U.S. at 57; *Hawes*, 529 F.2d at 476.

[4] *Hartsel v. Vanguard Grp., Inc*., C.A. No. 5394-VCP, 2011 Del. Ch. LEXIS 89, at *109 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del.), *cert. denied*, 80 U.S.L.W. 3708 (U.S. June 25, 2012) (No. 11-1259).

[5] *United States v. DiCristina*, No. 12-3720, 2013 WL 3984970, at *4 (2d Cir. Aug. 6, 2013) (emphasis added); *see also id*. ("focus of the statute's criminal proscription is … on the size of the business and the revenue derived by those who are running it"); *id*. at 5 ("Subsection (b)(2) lists acts of running a gambling business — "poolselling, bookmaking, maintaining [gambling devices], and "conducting" games — rather than the games themselves. It thus serves as an illustration of what may constitute running a gambling

consistent with (i) the principle that individual shareholders do not own a

corporation's assets merely because they own stock,[6] (ii) the general structure of

the U.S. securities laws (which only make individuals responsible for a

corporation's actions if they are "control persons"),[7] and (iii) what a reader using

"everyday speech" would take from the text and legislative history to be the

intended targets of Section 1955 — owner-operators and organized crime figures

rather than passive investors purchasing listed stocks in public markets.[8]  Plaintiff

has offered no support for his notion that "own all or part of" includes passive

---

operation.") (citation omitted).  All the prosecutions this Court discussed in *DiCristina* were of active participants in gambling businesses, not passive holders of publicly-traded stock, and DiCristina himself "<u>operated a poker club</u> in the back room of a warehouse in Staten Island."  *See id.* at 1 (emphasis added).

[6]   *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

[7]   *See, e.g.,* 15 U.S.C. § 78t(a).  Minority shareholders generally have no control or influence over the day-to-day management and operation of corporations in which they own stock.  *See United States v. Wallach,* 935 F.2d 445, 462 (2d Cir. 1991).

[8]   *See generally DiCristina*, 2013 WL 3984970, at *8 ("The legislative history is remarkably clear that the passage of this statute was driven by the desire to crack down on organized crime.  As the District Court noted, '[t]he debates focused not on prohibiting particular kinds of gambling, but on targeting particular kinds of criminals – i.e., reaching "<u>those who are engaged</u> in an illicit gambling business of major proportions."'  *United States v. DiCristina*, 886 F. Supp. 2d 164, 204 (E.D.N.Y. 2012) (quoting S. Rep. No. 91-617, at 73 (1969); H.R. Rep. No. 91-1549, at 53 (1970)))(emphasis added).  Passive ownership of publicly-traded stock is not "running" or being "engaged in" a gambling business any more than it is "running" or being "engaged in" software, semiconductor, and innumerable other businesses — it is investing.

ownership of publicly-traded stock.[9]

Plaintiff argues that the principles of statutory construction cited by the Investment Advisor Defendants are "narrowing" and only applicable if Section 1955 is ambiguous.  (Reply Br. at 1)  But Plaintiff's construction of Section 1955 is so broad and would effect such a sea change in the risks of everyday investment activity that the statute must be ambiguous in this context.  In any event, although some canons (such as the rule of lenity) are "narrowing" canons, others are not:

- The rule that context determines meaning for statutes is a default principle.  *See Johnson v. United States,* 559 U.S. 133, 139-40 (2010).

- The presumptions against extraterritoriality and against interfering with other sovereigns' laws are presumptions that Congress does not legislate to include extraterritorial conduct unless it specifically says it means to do that.[10]  Under both rules, courts presume that statutes do <u>not</u> have extraterritorial reach unless Congress makes a clear statement to the contrary.

Moreover, statutes "should be interpreted in a way that avoids absurd

---

[9]    This is the answer to Plaintiff's claim that defendants are seeking "judicial exceptions" and that there "is no good reason to exempt" passive ownership from Section 1955's ambit.  (Reply Br. at 1 & 8-9)  The question is whether Congress intended to include passive ownership in Section 1955's ambit.  If the answer to that is not clearly and obviously "yes" — and Plaintiff points to nothing saying that — then all applicable canons require Plaintiff's interpretation to be rejected.  This also disposes of Plaintiff's reliance on arguments that "public policy" precludes certain types of investments (*id.* at 12) — the canons defendants rely on ensure that courts do not allow criminal statutes to have boundaries created by vague notions such as "public policy."

[10]    *See* IA Br. at 20.

5

results."[11]  But Plaintiff admits that his theory would make simply moving to the U.S. while owning one share of 888 or NETeller stock a felony:  In response to the Investment Advisor Defendants' question about whether a Parisian investor would be liable under Section 1955 if he or she purchased one share of NETeller or 888 stock on the LSE and later moved to the U.S., Plaintiff says that would violate Section 1955.  (Reply Br. at 10)  Plaintiff would thus have it that every time someone moved to the United States, they must inventory their portfolio to make sure that it did not contain shares of an issuer that would violate Section 1955.[12]  If the person owned any such shares, they would have to sell those shares before moving to the United States.  That is not how Section 1955 has been interpreted, and if Congress intended Section 1955 to operate in this way it would have said so in clear and unmistakable terms.  Indeed, the structure of the OCCA — through which Section 1955 was enacted — confirms that Congress' failure to say that investing in publicly-traded stock was illegal under Section 1955 means it did not intend that result:  Congress knew how to make the purchase of publicly-traded stock illegal when it wanted to, and it actually did so through 18 U.S.C. § 1962(a)

---

[11]  *See United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000).

[12]  Taking Plaintiff's theory to its logical conclusion, this person would have to make sure that their portfolio did not contain any stock that might expose them to liability under any federal or state statute whose prohibitive language includes the word "own."  Although that might be a boon for U.S. lawyers, it cannot be what Congress intended.

6

(which prohibits using the proceeds of racketeering activity to purchase publicly-traded stock in certain circumstances).

Carried to its logical end, Plaintiff's theory would mean that an investor with single shares of stock in 100 different corporations would be deemed to be involved in running all of those businesses. Given the background principle that corporations exist to shield their investors from liability except in special circumstances (none of which are pleaded here), that is absurd. When Congress intends to disrupt established background principles, it says so in words no one can misunderstand. Nothing about Section 1955 even hints at the scope Plaintiff posits.[13]

Finally, Plaintiff argues that the District Court's decision would "eviscerate" Section 1955, allowing persons to escape liability by simply "setting up a corporation … ." But an interpretation that never had support and has never been relied on cannot be "eviscerate[d]." As this Court recently confirmed, Section 1955 targeted those with direct responsibility and involvement in a gambling entity's operations — those who "run" it — which is consistent with general principles of corporate law under which only persons with significant influence over or responsible ownership of a corporation can be held responsible

---

[13]    *See generally Dowling v. United States*, 473 U.S. 207, 213 (1985) (when assessing the reach of a federal criminal statute, courts "must pay close heed to language, legislative history, and purpose").

7

for corporate actions.  Plaintiff's silence confirms that Section 1955 has never been

used to prosecute passive holders of publicly-traded stock, even when it was

successfully used to prosecute the companies themselves.  (A-359–60)  The

recognition that Section 1955 does not criminalize passive ownership has not

impinged in any way on authorities' ability to prosecute those they thought

covered by Section 1955.  Plaintiff has not identified any intended targets of

Section 1955 who could not be prosecuted because they were no more than passive

shareholders.

### B.    Section 1955 Cannot Be Applied Extraterritorially

Plaintiff asserts that "foreign stock exchanges" should not be

permitted to give "criminal enterprises access [to] U.S. investment capital."

(Reply Br. at 10)  But foreign sovereigns can permit what they want in their own

jurisdictions — the question is whether a U.S. statute can be interpreted to punish

conduct that occurs in <u>those</u> jurisdictions and complies with <u>their</u> laws.[14]  The

presumption against extraterritoriality states that unless Congress clearly and

specifically states that it intends a statute to apply to foreign conduct, the statute

cannot be interpreted to do so.  Plaintiff's efforts to get around this fundamental

flaw in his case fail:

---

[14]    *See generally Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2885
(2010) (rejecting the disdain for foreign regulatory authorities Plaintiff's
arguments reflect).

- Conceding that the Fund's purchases of 888 and NETeller were made on the LSE and were legal in England, Plaintiff argues there is no extraterritorial application of U.S. law here because the Fund's "ownership of illegal gambling businesses occurred" in the U.S. (where the Fund is located).  (Reply Br. at 11)  Plaintiff cites no authority for that argument and ignores decisions confirming that isolated domestic contacts (such as the location of the purchaser of stock) do not permit statutes to apply to what is otherwise foreign conduct.[15]

- Plaintiff asserts that *Morrison* only applies to U.S. securities laws.  But *Morrison* applied a longstanding general rule for *all* federal statutes.[16]

- Plaintiff argues that Section 1955 contains no exception for ownership of illegal businesses whose shares are traded on a foreign exchange, but that gets the inquiry backwards — courts presume that U.S. statutes have no extraterritorial application, and the proponent of extraterritorial application must demonstrate that Congress specifically wrote a statute to apply to foreign conduct.[17] Plaintiff has not met that burden.

---

[15]  *See* IA Br. at 21–22; *United States v. Philip Morris USA, Inc.*, 783 F. Supp. 2d 23, 29 (D.D.C. 2011); *Cedeño v. Intech Grp., Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010).

[16]  *See Morrison*, 130 S. Ct. at 2877; *see also European Cmty. v. RJR Nabisco, Inc.*, 814 F. Supp. 2d 189, 193 (E.D.N.Y. 2011) (*Morrison* "bars the extraterritorial application of federal statutes that are silent or unclear concerning extraterritoriality").

[17]  Plaintiff even tries to resurrect arguments directly rejected by *Morrison*:  In *Morrison*, the Solicitor General argued that extraterritorial application of securities laws was necessary to prevent the U.S. from becoming a Barbary Coast for wrongdoers perpetrating frauds on other markets — the Supreme Court rejected that argument because it had no textual basis.  Plaintiff's argument here is substantively identical to the argument rejected in *Morrison*.  *Compare* 130 S. Ct. at 2886, *with* Reply Br. at 10 ("Defendants' proposed judicially-created loophole for illegal businesses listed on foreign exchanges would effectively legitimize off-shore havens for illegal conduct, and it would effectively permit foreign stock exchanges to veto U.S. law and

Because the fact that Section 1955 contains no indication that it was intended to apply extraterritorially cannot be remedied by re-pleading, dismissal should have been with prejudice.

### C.    The Fund's 888 And NETeller Investments Did Not Violate State Law

Plaintiff's Reply Brief does not address Delaware anti-gambling law, thus conceding that the Fund's investments did not violate that law.[18]  Plaintiff also does not dispute that his proposed interpretation of state laws would result in states regulating conduct outside their borders, thereby violating the Dormant Commerce Clause.  *See* IA Br. at 29-30.

Plaintiff flatly admits that the Defendants did not violate N.Y. Penal Law § 225.00.  (Reply Br. at 11)  Instead, Plaintiff alleges that Defendants violated N.Y. Penal Law § 100.00 and § 105.00 by soliciting the Fund to attempt to violate § 225.05 and conspiring to violate §225.05.  (Reply Br. at 11–12)  But Plaintiff admits that the Fund purchased stock in the secondary market and alleges no transactions directly between the Fund and 888 or NETeller.  Thus the Fund's secondary market investments cannot conceivably qualify as "materially aiding" a gambling company, nor could the transactions qualify as "solicit[ing], request[ing],

---

given criminal enterprises the ability to access U.S. investment capital").

[18]    *See Dorchester Investors v. Peak Trends Trust*, No. 99 Civ. 4696 (LMM), 2003 WL 223466, at *2 (S.D.N.Y. Feb. 3, 2003); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 670 (S.D.N.Y. 2000).

command[ing], importun[ing] or otherwise attempt[ing] to cause" another person

to engage in illegal conduct because Plaintiff does not allege that any Defendant

participated in the operations of 888 or NETeller.[19]

Moreover, both solicitation and conspiracy are specific intent crimes

under N.Y. law.[20]  But Plaintiff has made no effort to plead that any defendants

knowingly engaged in an attempt or conspiracy to violate any law.  Nor could he,

because he points to no indication that anyone has ever been prosecuted for making

passive investments in similar circumstances.

These fundamental flaws cannot be remedied by re-pleading, and so

the dismissal should have been with prejudice.

### III.    PLAINTIFF HAS PROVIDED NO BASIS TO INDICATE THAT ANY SPECIFIC CLAIMS COULD BE REHABILITATED THROUGH AMENDMENT

#### A.    The RICO Claims Cannot Be Fixed

<u>Plaintiff Cannot Fix His Failure To Plead Predicate Acts</u>.  A RICO

plaintiff must allege predicate acts as defined in the statute.  *See* 18 U.S.C. § 1961.

If owning 888 and NETeller stock was not illegal, then there can be no RICO

---

[19]    Indeed, for Plaintiff to press these claims under New York law with sincerity, he would have to allege that the counterparties to the Fund's LSE transactions themselves violated the same statutes, which would confirm that Plaintiff is seeking the blanket application of U.S. law to LSE transactions.

[20]    *See People v. Allen*, 92 N.Y.2d 378, 382 (N.Y. 1998) (solicitation); *People v. Ozarowski*, 38 N.Y.2d 481, 489 (N.Y. 1976) (conspiracy).

11

claims because Plaintiff alleged no other predicate acts.  This alone required

dismissal with prejudice.

>> Plaintiff Cannot Fix His Failure To Plead RICO Proximate Cause.

Plaintiff's allegations here are substantively identical to the allegations held

insufficient in *McBrearty*, *Seidl*, *Gomes*, and *Wodka,* and no amount of re-pleading

can change this (as proven by the fact that Plaintiff's counsel has failed on multiple

occasions to change the proximate cause theory he keeps asserting despite its

uniform rejection by courts).  Plaintiff tries to dodge this in two ways:

- Plaintiff argues that the District Court did not dismiss his RICO claims for lack of RICO proximate causation.  (Reply Br. at 15)  But the District Court relied on *McBrearty* and *Seidl* in dismissing Plaintiff's RICO claims, clearly indicating that Plaintiff's claims should be dismissed for the same reasons.  And even if the District Court had not dismissed for that reason, this Court could affirm for that reason.

- Plaintiff argues that this Court should ignore *McBrearty* and *Seidl* because of *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2d Cir. 2011).  But, as the Investment Advisor Defendants explained (IA Br. at 48–49) and Plaintiff does not challenge, *Ideal Steel* addressed the proximate causation standard under § 1962(a) (which is not at issue here), not the standard under § 1962(c) and (d) (which is at issue here).  That the two standards are different was confirmed in *Ideal Steel* itself and was previously noted in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006).

>> Plaintiff Cannot Fix His Failure To Plead Pattern And Continuity.

Plaintiff argues that he alleged open-ended continuity because "Defendants'

conduct … was halted only because of law enforcement activity."  (Reply Br. at

14)  That is not the test:  In determining whether the threat of long-term criminal

conduct necessary for open-ended continuity exists, a court must examine the

nature of the predicate acts alleged and the enterprise at whose behest the predicate

acts were performed.[21]  Because secondary market purchases are not illegal and

their participants are presumed not to be criminals, Plaintiff has pleaded no

elements of the sort of <u>criminal scheme</u> needed to support open-ended continuity.

Plaintiff did not allege that the Fund had a propensity to engage in criminal

conduct, and so Plaintiff cannot rely on the nature of the alleged enterprise to

establish open-ended continuity. [22]  This flaw cannot be cured through re-pleading,

nor has Plaintiff suggested otherwise.

      Finally, Plaintiff argues that he alleged closed-ended continuity

"based on the number of times and length of time during which Defendants

invested in illegal gambling activities."  (Reply Br. at 14)  But this Court does not

find closed-ended continuity "where the predicate acts spanned fewer than two

years."[23]  By Plaintiff's own admission, the alleged wrongdoing here spanned less

---

[21]    *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 97 (2d Cir.
1997).

[22]    All Plaintiff has alleged is that the Fund did what mutual funds normally do
— invest.  That is not sufficient to plead a RICO claim.  *Cf. People v. W.
Express Int'l Inc.*, 19 N.Y.3d 652, 660 (N.Y. 2012) (normal way business
was configured did not suffice to indicate distinct structured criminal
enterprise for the purposes of New York's RICO statute).

[23]    *See Fresh Meadow Food Servs. LLC v. RB 175 Corp.*, 282 Fed. Appx. 94,

than two years.  (A-351–52)  Re-pleading could not help here, either, because it is

a matter of public record when the Fund invested in 888 and NETeller and that

period is, under this Court's precedent, insufficient for closed-ended continuity.

### B.    The Fiduciary Duty And Negligence Claims Cannot Be Fixed

Allowing Plaintiff to replead fiduciary duty and negligence claims

would be futile for three reasons.  *First*, as explained in *In re Citigroup Inc.*

*Shareholder Derivative Litigation*, 964 A.2d 106 (Del. Ch. 2009), the mere fact

that a company takes a business risk and suffers losses does not evidence

misconduct and, without more, is not a basis for personal director liability.  Given

that there is no basis for alleging that defendants violated any law, Plaintiff's

breach of fiduciary duty and negligence claims amount to nothing more than

assertions that the Fund invested in unduly risky securities, and dismissal was

required under *Citigroup*.[24]  Because Plaintiff has conceded that he can plead no

more than he already has, re-pleading would be futile.

---

98 (2d Cir. 2008); *GICC Capital Corp. v. Tech. Fin. Grp.*, 67 F.3d 463, 469 (2d Cir. 1995).

[24]  Plaintiff attempts to distinguish *Citigroup* by arguing that the *Citigroup* defendants merely invested in excessively risky investments, whereas the defendants in this case violated the law.  (Reply Br. at 13)  But because Plaintiff has not successfully pleaded that the Fund's investments violated any law, *Citigroup* is directly on point.

14

*Second*, Delaware law requires that courts examining "the propriety of an investment decision" examine "the inherent and expected performance" of the entire investment portfolio.  12 Del. C. § 3302(c).  The Fund's share price increased 23.25% while it owned stock in 888 and NETeller, compared to the Dow Jones Industrial Average and the S&P 500, which increased 16.85% and 14.66%, respectively, over the same period.  (A-272–78)  Because the value of the Fund's entire portfolio increased and in fact outperformed the market while the Fund owned 888 and NETeller stock, Plaintiff cannot plead breach of fiduciary duty or negligence under Delaware law.[25]

*Third*, when a dispute relates to obligations that arise under a contract, that dispute should be treated as a breach of contract claim rather than a breach of fiduciary duty claim.  *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).  The Management Agreement plainly governs the relationship between the Fund and the Investment Advisor Defendants — but for that contract, NBM would not be managing the Fund.  Plaintiff argues that *Nemec* is inapposite because the Investment Advisor Defendants' duties to the Fund are not defined solely by the Management Agreement (Reply Br. at 15), but he fails to identify a single point of

---

[25]    The only authority Plaintiff cites to try to avoid this fatal flaw (*Trans World Airlines, Inc. v. Summa Corp.*, No. 1607, 1986 WL 5671 (Del. Ch. May 15, 1986)) is inapposite because it addressed a transaction that was subject to intrinsic fairness review, which has no application here (nor has Plaintiff claimed otherwise).  Plaintiff's reliance on *TWA* demonstrates that he cannot cure by re-pleading.

disagreement that is not covered by the Management Agreement. Further pleading would thus be futile in this regard.

### C.    The Negligence *Per Se* Claim Cannot Be Fixed

Re-pleading of the negligence *per se* claim would be futile for two reasons. *First*, because Plaintiff has not pleaded and cannot plead that the Fund violated any potentially applicable law, the predicate for a negligence *per se* claim — violation of a statute — is missing and re-pleading cannot change that.

*Second*, because negligence *per se* effectively creates a private right of action for violating a statute, the creation of such a right must be consistent with the legislative scheme in which the statute was enacted. Plaintiff concedes this[26] and does not dispute that Delaware law does not support a claim for negligence *per se* here. Plaintiff does argue that alleged violations of Section 1955 and New York state law support a negligence *per se* claim (Reply Br. at 14), but these arguments fail.

- Congress created a way to bring private claims relating to alleged violations of Section 1955 — the RICO statute. But that is the only mechanism Congress created, it does not apply here, and Plaintiff cannot evade that by arguing negligence *per se*.

- The New York legislature indicated that it does not wish there to be a private right of action relating to New York anti-gambling statutes by expressly repealing the private right of action that it had previously enacted.

---

[26]    Reply Br. at 14 ("[t]o support negligence *per se*, recovery need only be 'consistent' with the legislative scheme").

No re-pleading can change that allowing a negligence *per se* claim would be inconsistent with federal and New York law.

### D.    The Waste Claim Cannot be Fixed

Plaintiff argues that he has adequately pleaded a claim for waste because "the question is whether the 'investments' are properly characterized as the use of corporate assets for an 'improper' or 'unnecessary' purpose." (Reply Br. at 17)  Even if that that was the correct test, the Amended Complaint does not satisfy it because Plaintiff has not demonstrated that buying stock listed on the LSE was in any way "improper," "unnecessary," or inconsistent with any law.  In any event, the actual test for waste is whether a plaintiff has pleaded that defendants "irrationally squander[ed] corporate assets."[27]  Plaintiff cannot satisfy that test because (as Plaintiff concedes) the 888 and NETeller investments were undertaken in arm's-length secondary market transactions with willing buyers and sellers.  Re-pleading cannot fix this claim.

### E.    The Breach Of Contract Claim Cannot Be Fixed

The Fund contractually waived any possible claims against the

---

[27]    *See White v. Panic*, 783 A.2d 543, 554 (Del. 2001); *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000); *see also Taylor v. Kissner*, 893 F. Supp. 2d 659, 673 (D. Del. 2012) ("A claim of waste requires the pleading of particularized facts demonstrating that 'the consideration received by the corporation was so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation paid.'") (citation omitted).

17

Investment Advisor Defendants for "any error of judgment or mistake of law or for any loss suffered by" the Fund, except for claims against NBM for "willful misfeasance, bad faith, or gross negligence."  (A-250)  Thus, any claim that the Fund's investment decisions were errors in judgment or mistakes of law is contractually exculpated.

Plaintiff's sole effort to avoid this conclusion is to argue that the Amended Complaint adequately alleged willful misfeasance, bad faith and gross negligence because it says "Defendants' conduct was willful, wanton or reckless." (Reply Br. at 16)  But just saying those words is not enough to adequately plead willful misfeasance, bad faith, or gross negligence.  Plaintiff has thus confirmed that re-pleading would not salvage the breach of contract claim.

### F.    Re-Pleading Would Be Futile Because The Amended Complaint Is Time-Barred

Plaintiff affirmatively pleaded that the relevant limitations periods were due to expire on August 25, 2011.  (A-54)  When the Court dismissed *Gamoran III* without setting a date certain for re-pleading, all statutes of limitations started running again, leaving Plaintiff one day to refile.[28]  Because he took more than the one day left when he filed *Gamoran III*, his own pleadings

---

[28]    *See In re Direxion Shares ETF Trust*, No. 09 Civ. 8011(KBF), 2012 WL 717967, at *6 (S.D.N.Y. Mar. 6, 2012); *see also Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005) ("A statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice.").

18

establish that the statutes of limitations expired before he filed the Amended

Complaint.

Plaintiff's sole argument to evade the problem he created for himself

is that the Amended Complaint was filed within 30 days of the District Court's

June 15, 2012 modified decision and his claims in the Amended Complaint "relate

back" pursuant to 28 U.S.C. § 1367(d).  (Reply Br. at 23)  That argument fails for

three distinct reasons:

- Plaintiff failed to assert it in the District Court and cannot do so for the first time on appeal.

- Section 1367(d) only applies to state law claims over which a district court has supplemental jurisdiction under Section 1367(a).  But the District Court determined that all of the claims in the Amended Complaint arise under federal law,[29] and so supplemental jurisdiction is not at issue here.

- Section 1367(d) applies only to state law claims that are dismissed from federal court and re-filed in state court.[30]  But no such thing happened here:  *Gamoran II* was dismissed from federal court and Plaintiff filed *Gamoran III* in federal court, and likewise *Gamoran III* was dismissed from federal court and *Gamoran IV* was filed in federal court.  Plaintiff's own choices about what, where, and when to file took him out of Section 1367(d)'s ambit.

---

[29] *See* Memorandum & Order, *Gamoran v. Neuberger Berman Mgmt., LLC*, 10 Civ. 6234(LBS) (S.D.N.Y. filed Nov. 8, 2010) [ECF No. 14]; Order, *Gamoran v. Neuberger Berman Mgmt., LLC*, 10 Civ. 6234 (LBS) (S.D.N.Y. filed Feb. 9, 2011) [ECF No. 21].  Plaintiff has not appealed those decisions.

[30] *See Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998) ("Section 1367(d) ensures that the plaintiff whose supplemental state claim is dismissed has at least thirty days after dismissal to refile in state court.").

19

This is another example of why the procedural monster Plaintiff created of his own accord is important. No defendant forced Plaintiff to make the filing choices he did, and his belated and legally incorrect attempt to bring Section 1367(d) into the case shows that this is yet another last-ditch effort to keep this litigation going as long as possible. The defendants are entitled for it to be over.

## CONCLUSION

For all the foregoing reasons, this Court should affirm the dismissal of the Amended Complaint with prejudice.

Dated:  August 14, 2013

MILBANK, TWEED, HADLEY &
   McCLOY LLP

By:    /s Douglas W. Henkin     
   James N. Benedict
   jbenedict@milbank.com
   Alan J. Stone
   astone@milbank.com
   Douglas W. Henkin
   dhenkin@milbank.com
   Matthew J. Latterner
   mlatterner@milbank.com
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Attorneys for Defendants Neuberger Berman Management LLC, Neuberger Berman LLC, Benjamin Segal, Peter E. Sundman, and Jack L. Rivkin*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 28.1(e)(2)(C), I hereby certify that the foregoing brief complies with the type-volume limitations of Rule 28.1(e), in that the brief was produced using Times New Roman typeface in 14-point font, and contains 5,132 words according to the word processor utilized by my firm.

  /s Matthew J. Latterner  

Matthew J. Latterner
